UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FINDERS KEEPERS USA LLC, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 22-0009 (APM) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR A VIDEO PROCESSING SCHEDULE**

Defendant, the United States Department of Justice (the "Department"), by and through undersigned counsel, moves this Court for an order scheduling the processing of videotape responsive to Plaintiff's outstanding Freedom of Information Act ("FOIA") request.

**PROCEDURAL HISTORY**

On April 18, 2022, the Court issued an Order granting Plaintiff's Motion for a Processing Order, ECF No. 13, as conceded in part. ECF No. 15. The Order provided, in part, that the FBI is to:

> process Plaintiff's FOIA request at a rate of 1,000 pages per month with the first production due in 30 days and productions thereafter every 30 days [. . .] provide Plaintiff all non-exempt responsive records at no cost to Plaintiff, and [. . .] implement Plaintiff's prioritization and first process the enviroscan report and the photographs before processing the remaining documents, with the exception of the videotapes, which shall be the subject of a further order.

ECF No. 15. Subsequently, Defendant moved for, and was granted, a briefing schedule on the issue of the processing of videotape responsive to Plaintiff's FOIA request. ECF No. 16; Minute Order of Apr. 22, 2022.

## BACKGROUND

The FOIA encourages agencies to develop multi-track processing with the goal of responding to more requests. Declaration of Michael G. Seidel ("Seidel Decl.") ¶ 7. The FBI established four processing queues—small queue (1-50 pages), medium queue (51-950 pages), large queue (951-8,000 pages), and extra-large queue (more than 8,000 pages). *Id*. ¶ 10. Within each queue, requests are processed in "first in, first out" order. *Id.* By making interim releases of pages (paper) in 500-reviewed pages increments, the FBI regularly provides more pages to more requesters across the four queues, thus avoiding a system where a few, large queue requests monopolize finite processing resources resulting in less pages provided to fewer requesters on a more infrequent basis. *Id*. In addition to processing standard paper and electronic records in increments of 500 pages, by processing smaller portions of media records in interim releases, the FBI can provide more media records to more requesters, each month. *Id.* Processing media in this manner avoids a system where a few requests containing large amounts of media monopolize the FBI's limited media processing resources. *Id*.

Second, the policy promotes both the FBI's and requesters' efficiencies. *Id.* ¶ 11. Maintaining a steady interim release posture is key in meeting the demands posed by the growing number, size, and complexity of the FOIA requests received by the FBI. *Id*.

Third, part of the process in finalizing material for release involves information security. *Id*. All FOIA requests containing law enforcement records and media are processed on a classified computer network. *Id.* Thus, when a CD or DVD is prepared for release—after review and consultation—it must also undergo a multi-step information security review. *Id.* The FBI's security software must be used each time information is taken from the classified network and released to a requester in an unclassified format. *Id.* This process entails running a general security

protocol—the software scans for prescribed code words (for either paper or media records)—as well as an individualized protocol—the software scans for words that RIDS determines are unique to the particular request and may include searches for specific exempt words, names, confidential sources, or classified techniques. *Id.* The running of these security protocols, and resolving any issues that may arise, can require a significant amount of effort and time. *Id.*

As to the video in this case, the FBI has determined that there are four (4) videos totaling approximately 3 hours, 46 minutes, 52 seconds responsive to Plaintiff's FOIA request. *See id.* ¶¶ 4, 6; *see also* ECF No. 12 (Jt. Status Rep. of Mar. 18, 2022).[1] Starting in FY2019, the FBI instituted a policy of reviewing 15 minutes of video per month on CD or DVD per request. *See* Seidel Decl. ¶ 9.

As with other forms of records, this policy derives from, and is the FBI's effort to comply with, the Department of Justice's FOIA regulations, 28 C.F.R. § 16.5(b) (regarding prompt disclosure of responsive material upon payment of any applicable fees). Seidel Decl. ¶¶ 9, 7-8,

---

[1] Plaintiff represented in the Joint Status Report that in a letter dated August 6, 2019, the FBI asserted it had "17 video files" potentially responsive to Plaintiff's FOIA request, in addition to 2,378 responsive pages of records, *see* ECF No. 12, and that in the Answer, Defendant admitted the contents of the letter. *See* ECF No. 12; ECF No. 10 (Answer) ¶ 51. However, in the August 6, 2019, letter, the FBI stated that it had, "located video files that are potentially responsive to the subject of your request. If all of the potentially responsive media is released, you will owe $255.00 (17 CDs at $15.00 each)." Seidel Decl. Ex. A (Aug. 6, 2019, letter).

To be clear, the FBI did not state that it had located 17 videos; rather, the FBI informed Plaintiff that, regarding production cost estimates for media, it could take up to 17 CDs to produce the potentially responsive video, based on the FBI's interim release policy for media. In other words, the FBI estimated that the video would likely be produced in 17 monthly productions of one CD per month. Significantly, the FBI also stated, "[p]lease remember this is only an estimate, and some of the information may be withheld in full pursuant to FOIA/Privacy Act exemptions. Also, some of the information may not be responsive to your subject. Thus, the actual charges could be less." *Id.* The FBI did not intend to create the impression that there were a total of 17 separate videos, but rather was merely estimating the maximum number of monthly CDs that could be required.

10-14. The FBI's interim release policy, which is designed to equitably provide the largest number of requesters the largest amount of information possible. *Id.* ¶¶ 8, 23-24.

The FBI's policy regarding media is supported by a four-part rationale. *Id.* ¶ 9. First, the policy is based on sound business practice, *id.* ¶ 10. Second, the policy promotes processing efficiencies, *id.* ¶ 11. Third, the policy accounts for RIDS' technical limitations, *id.* ¶ 12. Fourth, the policy ensures that public information security is appropriately maintained. *Id.* ¶ 13.

Unlike paper, disclosure of media in response to a FOIA request presents several additional and distinct complexities. Initially, the video files must be converted to an MP4 format. *Id.* ¶ 17. The media processing software available to FBI FOIA analysts works more efficiently when video records are converted to MP4 files and audio files are converted to WAV files. Converting other file types to these formats is often a time-consuming process, and substantially limits the amount of media that can be processed. *Id*. ¶¶ 17-18.

Redaction of media is more time-consuming and complicated, as well. Media analysts must review the material to determine if release of the media would reasonably foreseeably cause harm, and whether redaction is called for under the enumerated exemptions. *Id.* ¶ 20. If such harm is present, the media analysts must redact exempt material from the media. *Id*. Unlike paper, however, media review often requires multiple viewings of the video, frame-by-frame, only after which can the arduous process of applying redactions to the video begin. *Id*. And equally significantly, if not more so, the FBI has only two analysts assigned and dedicated to processing/reviewing FOIA and Privacy Act media records; a limited number of analysts from the Digital Conversion Unit are available to perform file conversions; and a limited number of workstations are capable of processing media records to enable the current media processors to

review and process media records full time in first in, first out order. *Id.* ¶ 24. The equipment required for media processing is highly specialized and expensive. *Id.*

Accordingly, the FBI has determined that 15 minutes of video typically requires approximately 11 hours of processing time.[2] *Id.* at ¶ 23. 15 minutes of video and 30 minutes of audio presented appropriate sizes for quality assurance reviews and reviews by external subject matter experts. *Id.* Keeping media at this size allows media analysts to meet their goal of providing media for approximately 10-15 different requests each month (which includes audio, video, and high-quality photographs). *Id.* Using this 15 minute, the FBI can process the requested video in 15 months (i.e., 15 interim releases of 15 minutes each, on CD), to produce all non-exempt portions of the media and beginning after the FBI completes processing of the paper and photographic records. *Id*. at 6.

## ARGUMENT

Although the FBI is not seeking a stay of this case under *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), because it has already begun processing Plaintiff's FOIA request, the FBI believes that it is appropriate for the Court to consider the facts, circumstances, and practicalities facing FOIA staff in evaluating Plaintiff's request for immediate production. *See, e.g., Middle E. Forum v. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 185 (D.D.C. 2018) (courts in D.C. Circuit have considered the effect of other FOIA requests when analyzing the burden on an agency of meeting deadlines for review and production of FOIA material); *Elec. Privacy Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014) (denying plaintiff's motion for preliminary injunction requesting immediate production of documents

---

[2]  The FBI found processing 30 minutes of audio typically requires about the same amount of time, approximately 11 hours. *Id.*

pursuant to FOIA request, weighing the effect an injunction would have on other FOIA requesters, and noting that agencies typically respond to FOIA requests on a "first-in/first-out" basis unless a requestor shows a compelling need for expedition); *Weisberg v. Dep't of Just.*, 745 F.2d 1476 (D.C. Cir. 1984), 745 F.2d at 1497 (a "tremendous FOIA backlog" can explain an agency's delay); *Open America*, 547 F.2d at 615-16 (agency should process FOIA requests "on an equal and fair basis," and should generally handle "all requests on a first-in, first-out basis").[3]

As previously noted, the FBI has been inundated by increasing numbers of FOIA requests and litigation in recent years, on top of many other responsibilities. *See, e.g.*, *Am. Ctr. for Law & Just. v. Dep't. of Homeland Sec.*, Civ. A. No. 21-1364 (TNM), 2021 WL 5231939, at *3-5 (D.D.C. Nov. 10, 2021) (discussing the history and burdens of FOIA). Devoting any more of the FBI's finite FOIA resources to Plaintiff's request in this case would further reduce the already constrained resources available to fulfill requests submitted by multiple other requesters. And doing so would run contrary to the FBI's policy to process requests in the order in which they are received and would unfairly favor Plaintiff's requests over others submitted earlier in time.

Thus, Defendant respectfully request that the Court order that no more than 15 minutes of video be processed each month, beginning August 18, 2022.[4]

---

[3] The time that it has taken the FBI to begin production of records thus far should not entitle Plaintiff to an expedited production schedule. *Long v. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 43 (D.D.C. 2006) (department's failure to comply with the FOIA statutory deadlines "does not establish plaintiffs' right to expedited processing").

[4] The FBI anticipates that given the ordered rate for processing at 1000 pages per month, the release of the approximately 2,400 responsive pages of records will take three (3) interim productions (May, June, and July).

**CONCLUSION**

Accordingly, Defendant respectfully requests that the Court enter the attached proposed order governing media processing.

Dated: April 27, 2022                    Respectfully submitted,

                                         MATTHEW M. GRAVES
                                         United States Attorney
                                         D.C. Bar No. 481052

                                         BRIAN P. HUDAK
                                         Chief, Civil Division

                             By:    /s/ T Anthony Quinn
                                         T. ANTHONY QUINN
                                         D.C. Bar No. 415213
                                         Assistant United States Attorney
                                         Civil Division
                                         601 D St., NW
                                         Washington, D.C. 20530
                                         (202) 252-7558
                                         tony.quinn2@usdoj.gov

                                         *Counsel for Defendant*