UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FINDERS KEEPERS USA LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-0009 (APM) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| *Defendant*. | ) | |
| _____ | ) | |

**REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR A VIDEO PROCESSING SCHEDULE**

Defendant, the United States Department of Justice (the "Department"), by and through undersigned counsel, respectfully submits this reply in support of its motion for an order scheduling the processing of videotape responsive to Plaintiff's outstanding Freedom of Information Act ("FOIA") request (ECF No. 17).

**PRELIMINARY STATEMENT**

Plaintiff seeks to impose an onerous and unworkable video production schedule on Defendant, effectively monopolizing the Federal Bureau of Investigation's entire FOIA media processing group and equipment and assuring that other FOIA requesters will be unable to obtain responses to their FOIA requests in the order in which they were received. Plaintiff's primary basis for this demand for expedited processing is that, prior to the filing of this action, the FBI denied Plaintiff's expedited processing request and that now the FBI should be forced to produce the video files essentially immediately. Plaintiff has not established that expedited processing is appropriate in this case, and the Court should allow Defendant to process the video using its proposed schedule.

**PROCEDURAL HISTORY**

On January 4, 2022, Plaintiff filed the Complaint.  ECF No. 1. On March 4, 2022, Defendant filed its Answer.  ECF No. 10. On March 18, 2022, the Parties filed a Joint Status Report.  ECF No. 12. On April 18, 2022, the Court issued an Order granting Plaintiff's Motion for a Processing Order, ECF No. 13, as conceded in part.  ECF No. 15.  The Order provided, in part, that the FBI is to:

> process Plaintiff's FOIA request at a rate of 1,000 pages per month with the first production due in 30 days and productions thereafter every 30 days [. . .] provide Plaintiff all non-exempt responsive records at no cost to Plaintiff, and [. . .] implement Plaintiff's prioritization and first process the enviroscan report and the photographs before processing the remaining documents, with the exception of the videotapes, which shall be the subject of a further order.

ECF No. 15.  Subsequently, Defendant moved for, and was granted, a briefing schedule on the issue of the processing of videotape responsive to Plaintiff's FOIA request.  ECF No. 16; Minute Order of Apr. 22, 2022.

On April 27, 2022, Defendant filed its Motion for a Video Processing Schedule.  ECF No. 17.  On May 3, 2022, the Parties filed a Joint Status Report.  ECF No. 18.  On May 9, 2022, Plaintiff filed its Opposition to Defendant's Motion.  ECF No. 19

**ARGUMENT**

**A.   THE COURT SHOULD CONSIDER THE FACTS, CIRCUMSTANCES, AND PRACTICALITIES**

The FBI maintains that it is appropriate and necessary for the Court to consider the facts, circumstances, and practicalities facing FOIA staff in evaluating the proposed video processing schedule proposed by Defendant.  *See, e.g., Middle E. Forum v. Dep't of Homeland Sec*., 297 F. Supp. 3d 183, 185 (D.D.C. 2018) (courts in D.C. Circuit have considered the effect of other FOIA requests when analyzing the burden on an agency of meeting deadlines for review and production

2

of FOIA material); *Elec. Privacy Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014) (denying plaintiff's motion for preliminary injunction requesting immediate production of documents pursuant to FOIA request, weighing the effect an injunction would have on other FOIA requesters, and noting that agencies typically respond to FOIA requests on a "first-in/first-out" basis unless a requestor shows a compelling need for expedition); *Weisberg v. Dep't of Just.*, 745 F.2d 1476 (D.C. Cir. 1984), 745 F.2d at 1497 (a "tremendous FOIA backlog" can explain an agency's delay); *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 615-16 (D.C. Cir. 1976) (agency should process FOIA requests "on an equal and fair basis," and should generally handle "all requests on a first-in, first-out basis").

As previously noted, the FBI has been inundated by increasing numbers of FOIA requests and litigation in recent years, on top of many other responsibilities. *See, e.g.*, *Am. Ctr. for Law & Just. v. Dep't. of Homeland Sec.*, Civ. A. No. 21-1364 (TNM), 2021 WL 5231939, at *3-5 (D.D.C. Nov. 10, 2021) (discussing the history and burdens of FOIA). Devoting any more of the FBI's finite FOIA resources to Plaintiff's request for videos would further reduce the already constrained resources available to fulfill requests submitted by numerous other requesters.

As described in the attached Second Declaration of Michael G. Seidel ("2d Seidel Decl."), the FBI instituted a policy of reviewing 30 minutes of audio, 15 minutes of video, and 500 high quality photographs per month for release on CD or Digital Video Disc ("DVD"). 2d Seidel Decl. ¶ 3. These established media processing rates are based on reasonable business practices as well as a concern for fairness and efficiency due to a finite number of resources able to be devoted to each matter. *Id.* ¶ 4. This policy derives from, and is the FBI's effort to comply with, the Department of Justice's (the "Department's") FOIA regulations at 28 C.F.R. § 16.5(b) (regarding prompt disclosure of responsive material upon payment of any applicable fees). *Id.*

Adherence to this policy is key to addressing the large influx of FOIA and Privacy Act requests that require the processing of media. *Id.*

The processing rates of FBI's Record/Information Dissemination Section ("RIDS") are well researched, are based on sound statistical data, and enable RIDS to regularly release more media to a larger section of the requester community in compliance with the Department's FOIA regulations. *Id.* RIDS conducted time studies to discover the typical amount of time it takes to apply redactions and prepare media files for public release. *Id.* ¶ 17. Through this study, RIDS found 15 minutes of video typically requires approximately 11 hours of processing time. *Id.* RIDS found processing 30 minutes of audio typically requires about the same amount of time, approximately 11 hours. *Id.* Additionally, RIDS found 15 minutes of video and 30 minutes of audio presented appropriate, workable sizes for quality assurance reviews and reviews by external subject matter experts. *Id.* Keeping media at this size allows RIDS media analysts to meet their goal of providing media for approximately 10-15 different requests each month (this includes audio, video, and high-quality photographs). *Id.* By processing media at these rates in interim releases, RIDS is able to provide more media records to more requesters, each month. *Id.* ¶¶ 4, 8, 17.

RIDS media production is complicated by the fact that only a few RIDS FOIA/Privacy Act analysts possess the requisite technical training and FOIA knowledge necessary to appropriately review and process media, and RIDS has a limited number of workstations with the technical capability for processing media records. *Id.; see also* Seidel Decl. ¶ 11. Part of the process in finalizing material for release involves information security. *See* 2d Seidel Decl. ¶ 5. All FOIA and Privacy Act requests containing law enforcement records and media are processed on a classified computer network. *Id.* Thus, when a CD is prepared for release after review and

consultation, it also must undergo a multi-step information security review.  *Id.*  The running of these security protocols, and resolving any issues that may arise, can require a significant amount of effort and time.  *Id.*

Currently, RIDS has two qualified analysts who possess the requisite skills to process media records.  *Id.* ¶ 9.  One of the two media analysts is a team lead and expert who reviews the other media analyst's work.  *Id.*  His own production efforts must stop to fulfill his concurrent review duties.  *Id.*  Additionally, RIDS has approximately three analysts from the Digital Conversion Unit available to conduct file conversions.  The Digital Conversion Unit's purpose is to manage, consolidate, and operate the conversion of digitally captured and "digitally born" files stored on various media types to requested file formats, to ease the accessibility and usability for both investigative and administrative purposes.  *Id.* ¶ 9 n.1.

The analysts processing media records must possess legal knowledge of the FOIA and Privacy Acts to appropriately review media records for responsiveness and invoke proper withholdings pursuant to the exemptions afforded to federal agencies by FOIA and the Privacy Act.  *Id.* ¶ 10.  Media records subject to FOIA and the Privacy Act often contain investigative sensitivities requiring expert review by FBI investigative personnel or other subject matter experts outside of RIDS.  *Id.* ¶ 13.  These analysts also must be technologically trained and adept in addressing the obstacles posed by processing FBI media records.  *Id.* ¶ 10.  A CD/DVD containing digital media also must undergo a multi-step information security review to move information from the classified enclave to an unclassified, public release setting.  *Id.* ¶ 14.  Specifically, RIDS personnel must first purge the media records of all metadata present within the records.  *Id.*  This metadata can contain sensitive information concerning the FBI's digital security measures or the personal identifying information of FBI staff.  *Id.*  For video and audio

records, this takes about half the time accorded for the processing of the digital media (7.5 minutes for 15 minutes of video and 15 minutes for 30 minutes of audio). *Id*.

Following this step, the media must undergo a final quality check by an expert media reviewer. *Id.* One of the two media processing analysts acts as the expert media reviewer, thus slowing the overall production processing. *Id.* This quality check requires the media expert to review the video and audio, through a real-time playback of the media. *Id.* The running of these security protocols, and resolving any issues that may arise, requires a significant amount of time and effort which only increases as more media is added to an interim production. *Id.* After the video media are converted to a digital format, RIDS' media analysts then must review the material to determine if release of the media would present harms under FOIA and Privacy Act exemptions. *Id.* ¶ 16. If such harms are present, RIDS' media analysts must redact exempt material from the media. *Id.; see also* Seidel Decl. ¶¶ 19-22.

**B.**     **PLAINTIFF HAS NOT SHOWN A COMPELLING NEED FOR EXPEDITION**

Significantly, the time that it has taken the FBI to begin production thus far should not entitle Plaintiff to an expedited production schedule. *Long v. Dep't of Homeland Sec.,* 436 F. Supp. 2d 38, 43 (D.D.C. 2006) (department's failure to comply with the FOIA statutory deadlines "does not establish plaintiffs' right to expedited processing"). Indeed, plaintiff already has obtained an expedited production schedule for documents. *See* 2d Seidel Decl. ¶¶ 6-7.

In order to obtain expedited treatment of their FOIA request, Plaintiff must show a "compelling need" for expedition. *See* 5 U.S.C. § 552(a)(6)(E)(i). A compelling need is established if a person "primarily engaged in disseminating information" shows an "urgency to inform the public concerning actual or alleged Federal Government activity." *See* 5 U.S.C. § 552(a)(6)(E)(v)(ii). "In determining whether requesters have demonstrated 'urgency to

inform,' and hence 'compelling need,' courts must consider at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001).  The D.C. Circuit has explained that these factors must be narrowly applied and that "[t]he public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard."  *Id*. (quoting H.R. Rep. No. 104–795, at 26 (1996)).

Here, Plaintiff is not a person "primarily engaged in disseminating information" within the meaning of 5 U.S.C. § 552(a)(6)(E)(v)(ii).  Rather, Plaintiff "is a lost treasure locate-and-recovery service located in Clearfield, Pennsylvania."  *See* ECF No. 1 ¶ 4.  Second, the request for information about lost Civil War gold does not constitute a matter of current exigency to the American public.  Third, Plaintiff has not shown that the 15 months Defendant has requested to produce the videos would compromise a significant, recognized interest.  Thus, Plaintiff has not met the prima facie elements to establish a compelling need for expedition of the videos.  Indeed, had there been a compelling need, Plaintiff could have filed the instant action earlier.  Its delay in initiating this action belies its claim of urgency.

Thus, Defendant respectfully request that the Court provide that no more than 15 minutes of video need be processed each month, beginning August 18, 2022.

## CONCLUSION

Accordingly, Defendant respectfully requests that the Court enter the attached proposed order governing media processing.

Dated: May 18, 2022

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

BRIAN P. HUDAK
Chief, Civil Division

By:     */s/ T Anthony Quinn*
T. ANTHONY QUINN
D.C. Bar No. 415213
Assistant United States Attorney
Civil Division
601 D St., NW
Washington, D.C. 20530
(202) 252-7558
tony.quinn2@usdoj.gov

*Counsel for Defendant*

8