UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FINDERS KEEPERS USA LLC,

      Plaintiff,

                v.

UNITED STATES DEPARTMENT OF JUSTICE,

      Defendant.

Civil Action No. 1:22-cv-009-APM

## SECOND DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)      I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), Federal Bureau of Investigation ("FBI"), Winchester, Virginia. My background and qualifications are provided in my first declaration filed on April 27, 2022, at ECF No. 17-2 (hereafter "First Seidel Declaration"). Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Specially, I am aware of the FBI's handling of Plaintiff's FOIA request at issue in this case.

(2)      This declaration is my second declaration filed in this case and incorporates and supplements my First Seidel Declaration which addressed issues raised by this Court's Scheduling Order dated April 18, 2022, concerning the production rate, prioritization of processing responsive records, and a future order forthcoming as to the production rate of

1

responsive video material. (ECF No. 15.) The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith. This declaration is submitted in further support of Defendant's motion for a production rate of approximately 15-months (15 interim releases) to produce the responsive videos in approximately 15-minute increments per Compact Disc ("CD"), after processing of the paper and photographic records is complete. In addition, this declaration is in Reply to Plaintiff's Opposition to Defendants Motion for a Video Processing Schedule (hereafter "Opposition") (ECF. No. 19) at the above stated rate.

## I.  THE FBI'S JUSTIFICATION FOR 15-MONTH PROCESSING RATE
### ESTABLISHED RATES OF MEDIA RELEASES

(3)     As relevant background for the FBI's media interim release policy, the context of the entire FBI FOIPA program workload must be considered. The FBI has proposed a media processing rate here for this case that has a solid basis in established media processing policies. The FBI instituted a policy of reviewing 30 minutes of audio, 15 minutes of video, and 500 high quality photographs per month for release on CD or Digital Video Disc ("DVD"). This rate of processing has been considered reasonable in prior cases in the United States District Court for the District of Columbia. For example, this same rate was submitted in case 1:18-cv-02116, *Freedom Watch, Inc. v. U.S. Dep't of Just., et al.,* and approved by Judge Emmet G. Sullivan. See ECF No. 22 *Minute Order* dated August 27, 2019.

(4)     The FBI justified established media processing rates in the aforementioned FOIA litigation case, as based on reasonable business practices as well as a concern for fairness and efficiency because RIDS has a finite number of resources to devote to each case and each

2

requester. By limiting the amount of audio, video, and photographic material RIDS analysts

must process on an interim basis, RIDS ensures more requesters are equitably serviced. This

policy derives from and is the FBI's effort to comply with DOJ FOIA regulations at 28 C.F.R. §

16.5(b) (regarding prompt disclosure of responsive material upon payment of any applicable

fees) and adherence to this policy is key to addressing the large influx of FOIPA requests that

require the processing of media. RIDS' processing rates are well researched, are based on sound

statistical data, and enable RIDS to regularly release more media to a larger section of the

requester community in compliance with DOJ FOIA regulations. The FOIA encourages

agencies to develop multi-track processing with the goal of responding to more requests. By

processing smaller portions of media in interim releases, RIDS is able to provide more media

records to more requesters, each month. Processing media in this manner avoids a system where

a few requests containing large volumes of media monopolize RIDS' finite FOIPA media

processing resources. As stated in the First Seidel Declaration at paragraph 11, RIDS media

production is further complicated by the fact that only a few RIDS FOIPA analysts possess the

requisite technical training and FOIPA knowledge necessary to appropriately review and process

media and RIDS has a limited number of workstations with the technical capability for

processing media records.

*Media Processing Rate*

(5)      Plaintiff contends in their Opposition the FBI has not provided details as to where

in the FBI's multi-track processing regiment the Plaintiff's request currently resides (*see* ECF,

No. 19, Opposition page 11). As the FBI previously detailed in the First Seidel Declaration, the

rationale for the FBI's interim release policy is based on sound FOIA business practice. FOIA

encourages agencies to develop multi-track processing with the goal of responding to more

requests. Additionally, the policy promotes both RIDS and requester efficiencies. Moreover,
maintaining a steady interim release posture is key in meeting the demands posed by the growing
number, size, and complexity of FOIPA requests received by the FBI. Also, part of the process
in finalizing material for release involves information security. All FOIPA requests containing
law enforcement records and media are processed on a classified computer network. Thus, when
a CD is prepared for release after review and consultation, it must also undergo a multi-step
information security review. The running of these security protocols, and resolving any issues
that may arise, can require a significant amount of effort and time.

(6)     All three of the above-mentioned factors work together to form the basis of the
FBI's interim release policy, designed to most equitably provide the largest number of requesters
the largest amount of information possible. Altering the FBI's interim release policy to provide
more information faster or at a higher rate for requesters who litigate over those that do not
creates an imbalance of RIDS' finite FOIPA processing resources. In this instance, because the
Court Ordered rate of processing the paper and photographic records at a rate of 1,000 pages per
month is already twice the rate at which the FBI typically processes paper and photographic
records, processing at this higher rate means allowing one requester to consume a much larger
amount of RIDS resources and ahead of other requesters who submitted their requests prior to
Plaintiff. Without a compelling need to provide the media records in an expedited fashion, as
defined by 5 U.S.C. §§ 522(6)(E)(v)(I) and (II), the FBI asserts that such expedited treatment of
the portion of Plaintiff's request involving media would be unwarranted and further exacerbates
the imbalance.

(7)     Plaintiff's request was moved from the administrative stage (first in and first out)
to accelerated litigation processing. In other words, Plaintiff's request has moved to the front of

the line ahead of hundreds of other FOIA requesters that also have media production requests.
Currently, the FBI is processing media requests in nine (9) litigations (including Plaintiff's) with
another seven (7) litigations awaiting to begin media processing. Plaintiff's media processing
request is being handled as efficiently as possible with the limitations of personnel and resource
constraints. Plaintiff's request must share RIDS limited resources with the nine (9) litigations
with Court mandated processing schedules, while hundreds of other media processing requests
(including the additional seven (7) pending litigations) await the media processing team to
complete its current workload.

(8)     As stated *supra*, RIDS instituted a policy of reviewing 15 minutes of video per
month, on CD or DVD, per request. As with non-media, this policy derives from, and is the
FBI's effort to comply with, DOJ FOIA regulations at 28 C.F.R. § 16.5(b) (regarding prompt
disclosure of responsive material upon payment of any applicable fees); adherence to this policy
is key to addressing the influx of FOIPA requests containing media. In addition to processing
standard paper and electronic records in increments of 500 pages, by processing smaller portions
of media records in interim releases, the FBI is able to provide more media records to more
requesters, each month. Processing media in this manner avoids a system where a few requests
containing large amounts of media monopolize RIDS' limited FOIPA media processing
resources. Unfortunately, litigation media processing requests have exacerbated the production
of the backlog of media requests as litigation processing moves to the front of the line; therefore,
taking up a majority of the FBI's current resources.

(9)     In contrast to the personnel available when processing standard records requests,
there are even fewer qualified RIDS analysts who possess the requisite skills to process media
records because processing media records requires two separate, specialized skill sets.

Currently, RIDS has two analysts assigned and dedicated to processing and reviewing FOIPA

media records.  In fact, one of the two media analysts is a team lead and expert that reviews the

other media analyst's work.  His own production efforts must stop to fulfill his concurrent review

duties.  Additionally, RIDS has approximately three (3) analysts from the Digital Conversion

Unit ("DCU") available to conduct file conversions.[1]

(10)     First, as with non-media processing, the FOIPA analysts processing media records

must possess legal knowledge of the FOIA and Privacy Acts in order to appropriately review

media records for responsiveness and assert proper withholdings pursuant to the exemptions

afforded to federal agencies by the FOIA and Privacy Acts.  Second, and differing from the

requisite skills needed to process non-media, these individuals must be technologically trained

and adept in addressing the multitudinous obstacles posed by processing FBI media records.[2]

(11)     Third, RIDS has only a few workstations capable of processing media records.

The equipment required for media processing is highly specialized and expensive.  The formats

of FBI media records greatly vary and RIDS must have the equipment and software to review

and process all of these media types.  Additional space and resources to acquire and

accommodate more equipment and software for additional media processing are not currently

available to RIDS.

(12)     The Plaintiff points out that the FBI should move to add workstations and

additional personnel to media processing tasks.  The FBI has asked for additional resources and

---

[1] DCU's stated purpose is to manage, consolidate, and operate the conversion of digitally
captured and "digitally born" files stored on various media types to requested file formats, to
ease the accessibility and usability for both investigative and administrative purposes.  They play
a key role in helping the FBI manage information and records in the digital age.

[2] The difficulties associated with media processing are discussed *infra.*

6

will continue to do so.

(13)     Interim releases allow this limited number of highly skilled individuals to process FOIPA requests containing media in manageable, monthly pieces. This also enables RIDS to make more releases to more requesters each month – their goal is to process media in 10 to 15 different FOIPA requests each month, and processing media in manageable portions allows RIDS to meet this goal.   Media records subject to the FOIPA often contain investigative sensitivities requiring expert review by FBI investigative personnel or other subject matter experts ("SMEs") outside of RIDS.

(14)     As previously noted in ¶ 5 *supra*, part of the process of finalizing material for public release involves information security. As applied to records in media format, a CD/DVD containing digital media must also undergo a multi-step information security review to move information from the classified enclave to an unclassified, public release setting. Specifically, RIDS personnel must first purge the media records of all metadata present within the records. This metadata can contain sensitive information concerning the FBI's digital security measures or the personal identifying information of FBI staff. For video and audio records, this takes about half the time of the length of the digital media (7.5 minutes for 15 minutes of video and 15 minutes for 30 minutes of audio). Following this step, the media must undergo a final quality check by an expert FOIPA media reviewer. As detailed above, one of the two media processing analysts acts as the expert media reviewer, thus slowing the overall production processing. This quality check requires the FOIPA media expert to review the video and audio, through a real-

time playback of the media.[3]  The running of these security protocols, and resolving any issues that may arise, requires a significant amount of time and effort which only increases as more media is added to an interim production.

(15)    All four of the above factors work together to form the basis of the FBI's interim media release policy, designed to equitably provide the largest number of requesters the largest amount of information possible.

*Redaction of Exempt Video Information*

(16)    Once the video media are converted to a digital format,[4] RIDS' FOIPA media analysts then must review the material to determine if release of the media would present harms under FOIPA exemptions.  If such harms are present, RIDS' media analysts must redact exempt material from the media.  The First Seidel Declaration at ¶¶ 19-22 provided the layered media processing approach (processing video and audio is a two-stage approach).

*The FBI's Current Media Processing Rates*

(17)    To establish media processing rates, and similar to how RIDS calculated processing rates for non-media, RIDS conducted time studies to discover the typical amount of time it takes to apply redactions and prepare media files for public release.  Through this study, RIDS found 15 minutes of video typically requires approximately 11 hours of processing time. RIDS found processing 30 minutes of audio typically requires about the same amount of time, approximately 11 hours.  Additionally, RIDS found 15 minutes of video and 30 minutes of audio

---

[3] This review of the real-time playback often takes longer than the length of the actual audio/video.  This is because the reviewers often must pause, rewind, and/or re-review the media as they endeavor to ensure no sensitive FBI equities are subject to release.
[4] The FBI provided detailed explanation of its conversion process in the First Seidel Declaration at ¶¶ 16-18.

presented ideal sizes for quality assurance reviews and reviews by external SMEs, as described *supra*. Keeping media at this size allows RIDS media analysts to meet their goal of providing media for approximately 10-15 different requests each month (this includes audio, video, and high-quality photographs). Thus, RIDS determined these established processing sizes allow it to equitably distribute its finite media processing resources to provide the most records to the highest number of requesters each month.

(18)    Furthermore, the FBI does not have the additional resources necessary to produce more media records overall. Shifting more RIDS personnel to media processing would require RIDS to pull from the cadre of RIDS analysts already fully engaged in standard processing of pages. Shifting additional personnel has its limits due to the training necessary to process media. As previously detailed, *supra* ¶ 9, RIDS has only two (2) analysts assigned and dedicated to processing and reviewing FOIPA media records; approximately three (3) analysts from the Digital Conversion Unit ("DCU"), and a limited number of workstations capable of processing media records to enable RIDS' current media processors to review and process media records full time.

## II. VOLUME OF RESPONSIVE VIDEOS

(19)    As previously detailed in my First Seidel Declaration, the FBI determined, in response to Plaintiff's request, that there are four (4) responsive videos totaling approximately 3 hours, 46 minutes, 52 seconds. *See* ECF, Document 12, Joint Status Report ("JSR"), dated March 18, 2022. Plaintiff represented in the JSR that according to an FBI processing cost estimate fee letter dated August 6, 2019, received by the Plaintiff, the FBI alleged it had "17 video files" potentially responsive to Plaintiff's FOIA request in addition to 2,378 responsive pages of records. *See* First Seidel Declaration, Ex. A. Plaintiff further notes that in the

Defendant's Answer filed in response to Plaintiff's Complaint, the Defendant admitted the contents of the letter. *See* ECF, Document 10, Answer ¶ 51.

(20)     The FBI reported in its Answer that the FBI *had located 2378 pages of records and 17 video files responsive to Plaintiff's request.* The page count was reported accurately, but the FBI inadvertently reported 17 video files were located. Upon further review of the collected responsive media, the JSR provided the accurate video count located in response to Plaintiff's request, and the August 6, 2019, cost estimate letter, accurately reported it would require 17-CDs (not 17-videos) to produce the responsive material for Plaintiff's request. The FBI regrets the confusion to the Court and Plaintiff demonstrated by the inaccurate video count reported in the Answer.

(21)     The FBI advised in its August 6, 2019 cost letter, "The FBI located video files that are potentially responsive to the subject of your request. If all of the potentially responsive media is released, you will owe $255.00 (17 CDs at $15.00 each)." The FBI did not indicate that it had located 17 videos; instead, the language in the FBI's letter was to inform Plaintiff that with regard to production cost estimates for media, it could take up to 17 CDs to produce the videos.[5]

(22)     For purposes of clarity, there are four (4) responsive videos as accurately reported in the JSR. Based on the FBI's interim release policy for media, non-exempt information will be provided across an estimated 17 monthly productions of one CD per month. The FBI determined all non-exempt portions of the four (4) responsive videos containing approximately 3 hours, 46

---

[5] The FBI's letter also states, at the bottom of page 1, "[p]lease remember this is only an estimate, and some of the information may be withheld in full pursuant to FOIA/Privacy Act exemptions. Also, some of the information may not be responsive to your subject. Thus, the actual charges could be less." Costs are no longer an issue because the production will be provided to Plaintiff at no cost.

minutes, 52 seconds of material for review can be produced in 15 months (15 interim releases on

CD), after the FBI completes processing of the paper and photographic records.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of May 2022.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia