IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FINDERS KEEPERS USA LLC**     )<br>                                                         )<br>            Plaintiff,                           )<br>                                                         )<br>      v.                                             )     Civil Action No. 22-0009 (APM)<br>                                                         )<br>**U.S. DEPARTMENT OF JUSTICE,**  )<br>                                                         )<br>            Defendant.                       )<br>_____)  | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SANCTIONS**

**INTRODUCTION**

Through this lawsuit Plaintiff, a lost treasure locate-and-recovery service owned by Dennis and Kem Parada, seeks to hold the Federal Bureau of Investigation ("FBI") accountable for its actions in covering up the results of its excavation in March 2018 of a site in Western Pennsylvania that highly advanced scientific technology indicated contained multiple tons of gold. From the outset the government has met Plaintiff's efforts with stonewalling, intransigence, and outright untruths. The FBI's recent Court-ordered disclosure to Plaintiff of the contents of four videotapes at issue also reveals that the government has vexatiously multiplied the proceedings in this case in furtherance of its scheme to delay and obfuscate.

Specifically, after the parties spent weeks briefing the issue of a processing schedule for the four videotapes the FBI claimed to have—a vast reduction from its initial claim of 17 responsive tapes—and after the Court imposed a processing schedule the FBI informed Plaintiff that its entire video collection consists of videos provided the FBI by Dennis Parada, co-owner of Plaintiff Finders Keepers, on January 26, 2018, nearly two months before the FBI conducted the excavation. It defies reason and commonsense that Plaintiff would want to receive from the FBI

evidence that originated with Plaintiff and would want the FBI to devote any of its resources toward such an inane endeavor. Even more troubling, photographic evidence already submitted to this Court reveals that the FBI's own videographer recorded at least some of the excavation, yet the FBI has failed to account for any videotapes except those submitted by Plaintiff prior to the dig.[1] Under these circumstances, the Court should sanction the FBI and its counsel pursuant to the Court's inherent powers and the authority granted it by 28 U.S.C. § 1927.

Cognizant that this case is still in the early stages, Plaintiff does not lightly seek sanctions. But left unchecked the government's conduct will continue to consume unwarranted time of the Court and Plaintiff while unreasonably delaying Plaintiff's quest for the truth. The FBI has stated publicly that it found nothing whatsoever in its excavation at Dents Run in March 2018,[2] contrary to mounting evidence that the FBI in fact excavated something of great value. Both Plaintiff and the public deserve to know whether the FBI is telling the truth.

## BACKGROUND

After initially claiming to have no responsive documents and then asserting the responsive records are exempt as law enforcement records, the FBI finally advised Plaintiff in August 2019 that it had located approximately 2,378 pages of responsive documents and 17 responsive video files. *Id.* ¶ 51. Complaint ("Compl.") ¶¶ 46, 48, 51. In January 2022, having received no further substantive response from the FBI, Plaintiff filed this action. By Order dated March 8, 2022, the Court directed the parties to meet and confer and file a Joint Status Report ("JSR") by March 18, 2022. (Dkt. No. 11). Unfortunately, the parties failed to agree on a

---

[1] The missing videotapes are the subject of another motion Plaintiff filed on this same date seeking discovery.
[2] *See, e.g.*, Michael Rubinkam, FBI records on search for fabled gold raise more questions, *Associated Press*, May 28, 2022, https://apnews.com/article/civil-war-gold-fbi-pennsylvania-1352e0c3682bc88650a74136dc3c6c74.

processing schedule or prioritization of the request. Nor was Plaintiff able to obtain an explanation for why the FBI's number of responsive video records has changed from 17 video files, *see* Compl. ¶ 51—a number it acknowledged as correct in its Answer at ¶ 51—to its latest claim of only four videos totaling less than four hours. *See* JSR at ¶ 4(b)(i).[3]

On the issue of responsive videotapes the FBI moved the Court to approve a processing schedule that would allow the FBI to process the videotapes at a rate of 15 minutes per month for a total of 15 months based on the FBI's claim to have only four videotapes. In support of its motion the FBI submitted two declarations from FBI Section Chief of the Record/Information Dissemination Section Michael G. Seidel (Dkt. Nos. 17-2, 21-2). Mr. Seidel devoted most of his declarations to discussing the technical challenges he claimed the FBI faced in processing the videotapes. For example, Mr. Seidel described the "multi-step information security review" the FBI had to perform, which involved "purg[ing] the media records of all metadata present," and "a final quality check," both of which Mr. Seidel claimed "require[] a significant amount of time and effort." Declaration of Michael G. Seidel (Dkt. No. 17-2), ¶ 13. He also described the challenges posed by processing "outdated, analog formats," *id.* ¶ 16, and digital files obtained "from third party sources[.]" *Id.* ¶ 17.

Plaintiff opposed this motion on multiple grounds. Among other things, Plaintiff asserted that much of the discussion in Mr. Seidel's declaration concerning the challenges the FBI faced in processing the videotapes "has no relevance here" because "[t]he videotapes Plaintiff seeks were created by the FBI itself in 2018." Plaintiff's Opposition to Defendant's Motion for a Video

---

[3] In its motion for a video processing schedule (Dkt. No. 17) the FBI attempted to explain this discrepancy, stating its representation of having only 17 video files was an "estimate[] that the video would likely be produced in 17 monthly productions of one CD per month." Memorandum of Points and Authorities in Support of Defendant's Motion for a Video Processing Schedule (Dkt. No. 17-1), at 3 n.1.

Processing Schedule (Dkt. No. 19) at 12. In support, Plaintiff cited the Declaration of Warren Getler (Dkt. No. 19-2), attesting to the presence of a videographer for the FBI at the Dents Run excavation on March 13, 2018, together with a photograph depicting an FBI official videotaping the dig (Dkt. No. 19-1).

In its reply in support of its motion the FBI ignored this evidence entirely and continued to insist that a faster processing schedule would "impose an onerous and unworkable video production schedule on Defendant[.]" Reply in Support of Defendant's Motion for a Video Processing Schedule (Dkt. No. 21) at 1.

On May 27, 2022, the Court issued an Order requiring the FBI in processing the videotapes to prioritize "footage that confirms whether the FBI discovered and carried away gold from the dig site at Dents Run on March 13 or 14, 2018." Order at 1 (Dkt. No. 22). For any such footage the Court ordered the FBI to begin processing "in 30-minute increments per month until completion[.]" *Id.* at 2. The Court also ordered the FBI to advise Plaintiff by June 8, 2022, "whether any of the four videotapes depict the discovery, removal, or transport of gold (or anything else) from the Dents Run dig site." *Id.*

By email dated June 7, 2022, counsel for the FBI provided the required notice (attached as Exhibit A). That notice included the following descriptions of each of the four videos the FBI claims constitute the totality of responsive videotapes:

> *Video provided by Dennis Parada on 1/26/2018*. Video is from a DVD entitled "America Unearthed - Hunt for the Holy Grail". This History Channel episode depicts individuals from Finders Keepers assisting in the hunt for treasure. The orignial [sic] air date for the episode was 3/15/2013 (emphasis added).
>
> *Video provided by Dennis Parada on 1/26/2018*. Video is from a DVD which contain [sic], in sum, video related to tests conducted by Dennis Parada and others at the Dents Run site (emphasis added).

4

> *Video provided by Dennis Parada on 1/26/2018*. Video is from a DVD which contain [sic], in sum, video related to tests conducted by Dennis Parada and others at the Dents Run site (emphasis added).
>
> *Video provided by Dennis Parada on 1/26/2018*. Video is from a 32GB thumb drive which contain [sic], in sum, video related to tests conducted by Dennis Parada and others at the Dents Run site. This video also includes a FOX 8 news segment at the beginning which runs 0:01:49 (emphasis added).

As described for the first time by the FBI, each of the responsive videotapes was provided by Dennis Parada—co-owner of Plaintiff Finders Keepers—to the FBI well before the FBI conducted its excavation at Dents Run.

## ARGUMENT

### I. THE FBI'S COUNSEL SHOULD BE SANCTIONED PURSUANT TO 28 U.S.C. § 1927 FOR VEXATIOUSLY MULTIPLYING THE PROCEEDINGS IN THIS CASE.

Pursuant to 28 U.S.C. § 1927 a court may assess attorney's fees against counsel "who so multiplies the proceedings in any case unreasonably and vexatiously[.]" The D.C. Circuit has yet to establish whether the standard for unreasonable and vexatious conduct under section 1927 is recklessness or the more stringent bad faith. *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 905 (D.C. Cir. 1998). It is clear, however, that to warrant such a sanction, the conduct of an attorney must at least "'evidence . . . recklessness, bad faith, or improper motive'" in filings or proceedings that are deemed to be unreasonable and vexatious." *Id.* at 906 (quoting *Travelers Ins. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1416-17 (5th Cir. 1994)). As the D.C. Circuit has explained, under this statutory provision "attorneys have been held accountable for decisions that reflect reckless indifference to the merits of a claim." *Reliance Ins. Co. v. Sweeney Corp.*, 792 F.2d 1137, 1138 (D.C. Cir. 1986). And unlike bad faith, which "requires finding an intent unreasonably to delay the proceedings," "recklessness does not require showing that unreasonable delay was the intent or purpose of the attorney's actions." *Citizens for*

5

*Responsibility & Ethics in Washington v. U.S. Dep't of Veterans Affairs*, 134 F. Supp. 3d 63, 66 (D.D.C. 2015) ("*CREW v. VA*") (citing *United States v. Wallace*, 964 F.3d 1214, 1219 (D.C. Cir. 1992)).

The Court-required notice that the FBI provided Plaintiff on the contents of the videotapes at issue brings into stark relief the degree to which the FBI and its counsel have recklessly and with indifference misled both Plaintiff and this Court about the nature of those videotapes. It is self-evident that Plaintiff through its FOIA request does not seek documents already in its possession and generated before the FBI even began the excavation in March 2018. Indeed, the FBI's description of the videotapes fails to correlate with any of the categories of documents sought in Plaintiff's January 15, 2018 FOIA request, specifically:

> (1) Copies of all public records pertaining to the FBI's investigation of an alleged missing shipment of gold purportedly buried in Pennsylvania state forest land in Dents Run, Elk County, Pennsylvania;
> (2) Copies of all documents relied upon in support of a request to the Federal Court in Pittsburgh for authorization to dig at the site in Dents Run;
> (3) Copies of all communications with Enviroscan pertaining to scientific sampling and analysis of Dents Run, including the report on the Enviroscan findings;
> (4) Copies of all requisitions for expenditures associated with the investigation at Dents Run;
> (5) Copies of the inventory of items collected from the Dents Run site; and
> (6) Copies of authorization for FBI agents to commence an investigation of the purported missing shipment of gold.

Compl. ¶ 45.

In short, Plaintiff has no interest in receiving these videotapes, which are already in its possession and do not bear directly on the subject of its FOIA request. Having waited years for the FBI to even begin its document production, Plaintiff would not have sought to prolong that production even further to process tapes it does not seek and did not request and to divert the FBI's resources for such an unproductive and ultimately foolish endeavor.

Had the FBI through its counsel made clear at the outset the contents of the four videotapes the parties could have avoided altogether briefing any issue concerning their production. But the FBI failed to do so and as a direct result of this failure, which displayed a "reckless indifference to the merits" of the FBI's claims, *Reliance Ins. Co. v. Sweeney Corp.*, 792 F.2d at 1138, the parties unnecessarily briefed the issue of what videotape processing schedule the Court should impose. Accordingly, Plaintiff is entitled to attorney's fees for this matter as well as the fees associated with resolving the instant motion.

## II. THE COURT SHOULD EXERCISE ITS INHERENT AUTHORITY AND SANCTION THE FBI FOR ITS BAD FAITH CONDUCT.

Courts also possess "the inherent authority to impose sanctions in the form of attorneys' fees, costs, and expenses against both parties and their attorneys." *CREW v. VA*, 134 F. Supp. at 66. But only conduct that constitutes bad faith "justif[ies] invoking the court's inherent powers." *United States v. Wallace*, 964 F.2d at 1217. As the Supreme Court has explained, a court may assess attorney's fees when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (citations omitted). Conduct that falls within the reach of a court's inherent power includes a showing of bad faith "by delaying or disrupting the litigation[.]" *Id.* Exercising this power serves "the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Id.* (citation omitted).

The facts here support a finding that the FBI acted in bad faith with its dilatory and disruptive tactics that intentionally obscured from Plaintiff and the Court the true nature of the four videotapes. In opposing the government's motion for a videotape processing schedule Plaintiff stated unequivocally, supported by factual evidence, its understanding that the requested

7

videotapes were created by the FBI during the Dents Run dig. *See* Plaintiff's Opposition to Defendant's Motion for a Video Processing Schedule at 12 and Exhibit A; Declaration of Warren Getler at ¶ 9. The FBI never disputed this understanding, and instead continued to insist it needed 15 months to process the tapes because of the technical challenges it claimed to face.

Moreover, the FBI's actions here are part of a larger pattern of delay and obfuscation. At every turn the FBI has resisted providing any documents to Plaintiff that would reveal publicly or to Plaintiff the results of the FBI's excavation at Dents Run in March 2018. For these reasons the Court should also exercise its inherent authority and award Plaintiff its attorney's fees for briefing the motion for a video processing schedule as well as the fees associated with resolving the instant motion.

## **CONCLUSION**

The FBI and its counsel have chosen litigation tactics that delay and obfuscate, directly contrary to their obligations to the Court and Plaintiff. This conduct is sanctionable under both this Court's inherent authority and 28 U.S.C. § 1927. Accordingly, Plaintiff respectfully requests that the Court grant this motion and award Plaintiff its attorney's fees in litigating both the FBI's motion for a processing schedule and this motion.

Pursuant to LCvR 7(m) counsel for Plaintiff consulted with counsel for the Defendant, who advised that Defendant opposes this motion.

Dated: June 10, 2022                                  Respectfully submitted,

*/s/ Anne L. Weismann*
Anne L. Weismann
(D.C. Bar No. 298190)
5335 Wisconsin Avenue, N.W., Suite 640
Washington, D.C. 20015
Phone: 301-717-6610
Weismann.anne@gmail.com

*Attorney for Plaintiff*

Case 1:22-cv-00009-APM   Document 23-1   Filed 06/10/22   Page 9 of 9

*Attorney for Plaintiff*