IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FINDERS KEEPERS USA LLC** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-0009 (APM) |
| ) | |
| **U.S. DEPARTMENT OF JUSTICE,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT DISCOVERY**

**INTRODUCTION**

Contrary to the letter and spirit of the Freedom of Information Act ("FOIA"), the Federal Bureau of Investigation ("FBI") has placed multiple obstacles in Plaintiff's path to prevent Plaintiff and the public from learning what transpired in March 2018 when the FBI conducted an excavation in Dents Run, Pennsylvania for Civil War-era gold. Using every procedural trick available, the FBI stalled for years producing any documents responsive to Plaintiff's FOIA request. Once in litigation and following a Court-ordered production schedule, the FBI blatantly misled the Court and Plaintiff about the contents of four videotapes that it represented constitute the entirety of responsive videotapes. The evidence of record, however, is to the contrary, suggesting either the FBI lied to this Court or it destroyed videotapes responsive to Plaintiff's request. In either case the FBI appears to have acted in bad faith. Accordingly, the Court should exercise its inherent discretion and grant Plaintiff targeted discovery to ensure public accountability for the FBI's actions.

**BACKGROUND**

The FOIA request at issue, made by Finders Keepers, a lost treasure locate-and-recovery service owned by Dennis and Kem Parada, dates back to May 8, 2018, and seeks six categories of records from the FBI pertaining to the FBI's search for a large cache of Civil War-er gold that highly sophisticated scientific equipment indicated was buried in Pennsylvania state forest land in Dents Run, Elk County, Pennsylvania. Complaint ("Compl."), ¶ 45. Finders Keepers submitted its request less than two months after the FBI conducted the excavation on March 13 and 14, 2018.

Initially by letter dated May 23, 2018, the FBI advised Plaintiff that after a search of its Central Records System it was unable to identify any main file records responsive to the request. *Id.* ¶ 46. After the Department of Justice ("DOJ") granted Plaintiff's administrative appeal the matter was remanded to the FBI to conduct a further search for responsive records. *Id.* ¶ 47.

On remand, the FBI claimed that the records responsive to Plaintiff's request are law enforcement records and that in view of a pending or prospective law enforcement proceeding release could reasonably be expected to interfere with enforcement proceedings. The FBI stated that as a result it was administratively closing Plaintiff's request. *Id.* ¶ 48.

Another administrative appeal ensued on January 28, 2019, followed by another remand. Compl. ¶ 49. DOJ also granted this appeal and again remanded the request to the FBI for further processing of the responsive records. *Id.* ¶ 50. This time on remand the FBI notified Plaintiff that it had located approximately 2,378 pages of records and 17 video files potentially responsive to Plaintiff's FOIA request. *Id.* ¶ 51. After Plaintiff confirmed its willingness to pay the estimated processing costs—approximately $325 for CD releases or $368.90 for paper releases—the FBI

advised Plaintiff in an email dated September 23, 2019, that it was moving forward with processing Plaintiff's request as initially submitted. *Id.* ¶¶ 51-52.

Plaintiff subsequently requested expedition by letter dated March 10, 2021, to DOJ's director of Public Affairs. Compl. ¶ 55. As Plaintiff explained, its request now involves a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity that affect public confidence, citing four recent news articles. *Id.* Plaintiff further explained that the news coverage and Plaintiff's own investigation revealed significant questions about the FBI's integrity, noting that the FBI had spent considerable tax dollars on the gold recovery venture. *Id.* By letter dated April 5, 2021, the FBI advised Plaintiff that its request for expedition was denied. *Id.* ¶ 56.

When Plaintiff filed the Complaint in this case it had yet to receive a single document from the FBI. By Order dated March 8, 2022, the Court directed the parties to meet and confer and file a Joint Status Report ("JSR") by March 18, 2022. (Dkt. No. 11) addressing, among other things, a processing schedule. During these communications counsel for the FBI advised Plaintiff's counsel that the FBI had only four responsive videos totally less than four hours, even though just a few weeks prior it admitted in its Answer at ¶ 51 that the FBI had 17 video files. *See* JSR at ¶ 4(b)(i).

The FBI finally began processing and producing documents only after the Court issued an Order on April 18, 2022 (Dkt. No. 15), directing the FBI to process records at a rate of 1,000 pages per month, with rolling monthly productions, at no cost to Plaintiff, and implementing Plaintiff's prioritization by first processing the enviroscan report and photographs. The Court's April 18 Order left open the issue of a production schedule for the videotapes.

The FBI subsequently moved the Court to approve a video processing schedule that would allow the FBI to process the videotapes at a rate of 15 minutes per month for a total of 15 months based on the FBI's claim to have only four videotapes. In support of its motion the FBI submitted two declarations from FBI Section Chief of the Record/Information Dissemination Section Michael G. Seidel (Dkt. Nos. 17-2, 21-2).

Plaintiff opposed this motion on multiple grounds. Among other things, Plaintiff asserted that much of the discussion in Mr. Seidel's declaration concerning the challenges the FBI faced in processing the videotapes "has no relevance here" because "[t]he videotapes Plaintiff seeks were created by the FBI itself in 2018." Plaintiff's Opposition to Defendant's Motion for a Video Processing Schedule (Dkt. No. 19) at 12. In support, Plaintiff cited the Declaration of Warren Getler (Dkt. No. 19-2), attesting to the presence of a videographer for the FBI at the Dents Run excavation on March 13, 2018, together with a photograph depicting an FBI official videotaping the dig (Dkt. No. 19-1).

In its reply in support of its motion the FBI ignored this evidence entirely and continued to insist that a faster processing schedule would "impose an onerous and unworkable video production schedule on Defendant[.]" Reply in Support of Defendant's Motion for a Video Processing Schedule (Dkt. No. 21) at 1.

On May 27, 2022, the Court issued an Order requiring the FBI in processing the videotapes to prioritize "footage that confirms whether the FBI discovered and carried away gold from the dig site at Dents Run on March 13 or 14, 2018." Order at 1 (Dkt. No. 22). For any such footage the Court ordered the FBI to begin processing "in 30-minute increments per month until completion[.]" *Id.* at 2. The Court also ordered the FBI to advise Plaintiff by June 8, 2022,

"whether any of the four videotapes depict the discovery, removal, or transport of gold (or anything else) from the Dents Run dig site." *Id.*

By email dated June 7, 2022, counsel for the FBI provided the required notice (attached as Exhibit A). That notice included the following descriptions of each of the four videos the FBI claims constitute the totality of responsive videotapes:

> Video *provided by Dennis Parada on 1/26/2018*. Video is from a DVD entitled "America Unearthed - Hunt for the Holy Grail". This History Channel episode depicts individuals from Finders Keepers assisting in the hunt for treasure. The orignial [sic] air date for the episode was 3/15/2013 (emphasis added).
>
> *Video provided by Dennis Parada on 1/26/2018*. Video is from a DVD which contain [sic], in sum, video related to tests conducted by Dennis Parada and others at the Dents Run site (emphasis added).
> *Video provided by Dennis Parada on 1/26/2018*. Video is from a DVD which contain [sic], in sum, video related to tests conducted by Dennis Parada and others at the Dents Run site (emphasis added).
>
> *Video provided by Dennis Parada on 1/26/2018*. Video is from a 32GB thumb drive which contain [sic], in sum, video related to tests conducted by Dennis Parada and others at the Dents Run site. This video also includes a FOX 8 news segment at the beginning which runs 0:01:49 (emphasis added).

As described for the first time by the FBI, the entirety of the FBI's responsive videotapes consists of those provided by Dennis Parada—co-owner of Plaintiff Finders Keepers—to the FBI well before the FBI conducted its excavation at Dents Run.

## ARGUMENT

### I. THE COURT SHOULD EXERCISE ITS SOUND DISCRETION AND GRANT PLAINTIFF TARGETED DISCOVERY IN LIGHT OF THE EVIDENCE THAT THE FBI IS ACTING IN BAD FAITH.

Although FOIA cases typically are resolved without discovery, *see, e.g.*, *Voinche v. FBI*, 412 F. Supp. 2d 60, 71 (D.D.C. 2006), the court, as with any civil litigation, retains broad discretion on whether and what discovery a plaintiff should be accorded. *See, e.g.*, *SafeCard Servs., Inc. v. Sec. & Exchange Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). "In FOIA cases,

as in other litigation, discovery is "an important tool for truth-testing[.]" *Washington Post Co. v. U.S. Dep't of State*, 840 F.2d 26, 38 (D.C. Cir. 1988), *reh'g granted, judgment vacated on other grounds*, 898 F.2d 793 (D.C. Cir. 1990). Discovery is especially appropriate where a FOIA plaintiff has "made a sufficient showing that the agency acted in bad faith . . . has raised a sufficient question as to the agency's good faith . . . or when a factual dispute exists and the plaintiff has called the affidavits submitted by the government into question[.]" *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, No. 05-2078 (EGS), 2006 U.S. Dist. LEXIS 34857, at *8 (D.D.C. June 1, 2006) ("*CREW v. DOJ*"). The need for discovery may be especially acute where, as here, "one party has an effective monopoly on the relevant information[.]" *Ray v. Turner*, 587 F.2d 1187, 1218 (D.C. Cir. 1978).

      This case presents facts that raise a sufficient question of bad faith on the part of the FBI in responding to Plaintiff's FOIA request and, in particular, the request for videotapes to warrant further exploration through discovery. With its latest revelation concerning the content of the four tapes the FBI claims are all it possesses that fall within the scope of Plaintiff's FOIA request the agency essentially has disclaimed having *any* tapes that recorded the events at Dents Run on March 13 and 14, 2018. But evidence already in the record, namely a picture of an FBI individual videotaping at least part of the Dents Run excavation (Dkt. No. 19-1),[1] suggests either the FBI has falsely claimed to have no other responsive videotapes or the FBI illegally destroyed responsive videotapes in an effort to circumvent the FOIA's disclosure requirements. Either case, however, raises a question of the agency's bad faith that is best answered through discovery.

      Under comparable circumstances the court in *Judicial Watch v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 28 (D.D.C. 1998), concluded that discovery was appropriate where the agency's

---

[1] For the Court's convenience this photograph is also attached as Exhibit B to this memorandum.

6

search for documents related to trade missions conducted by the Department of Commerce suspiciously failed to uncover documents from the Secretary of Commerce, the White House, or the Democratic National Committee as well as "suspiciously little correspondence to and from trade mission participants[.]" *Id.* at 31. The agency's "repeated[] and gross[] mishandle[ing] [of] materials responsive to Judicial Watch's FOIA requests" led the Court to conclude that discovery was appropriate. *Id.* at 30.

Here, too, the FBI "suspiciously" has no videotapes from the Dents Run excavation despite the presence of a videographer for the FBI. Further, the FBI has repeatedly and grossly mishandled Plaintiff's FOIA request, as illustrated by Plaintiff's two successful administrative appeals and the FBI's extensive delay in producing a single document to Plaintiff. Moreover, as in *Judicial Watch v. Dep't of Commerce*, Plaintiff brought this case against a backdrop of allegations of serious impropriety on the part of the FBI, namely covering up the results of its Dents Run dig. The FBI's bad faith evidenced here "did not occur[] in a vacuum." *Judicial Watch v. Dep't of Commerce*, 34 F. Supp. 2d at 29. Under these circumstances, without discovery the public may be forever barred from learning what happened at Dents Run in March 2018.

In sum, the totality of the evidence to date raises a serious question of whether the FBI is complying in good faith with its FOIA obligations. This is enough to justify discovery at this juncture. *CREW v. DOJ*, 2006 U.S. Dist. LEXIS 34857, at *10, 22.

## II. DEPOSITIONS OF SELECT FBI OFFICIALS PRESENTS THE MOST EFFICIENT WAY TO RESOLVE THE QUESTIONS CONCERNING THE FBI'S BAD FAITH.

Mindful that discovery should not derail this lawsuit, which is at an early stage, Plaintiff proposes that discovery be limited to the depositions of a few individuals who were present at the

Dents Run dig and therefore are best situated to answer the serious questions raised by the FBI's conduct, as well as FBI declarant Michael G. Seidel, who claimed he was "aware of the FBI's handling of Plaintiff's FOIA request at issue in this case." Second Declaration of Michael G. Seidel at ¶ 1 (Dkt. No. 21-1). Depositions of these individuals present the most stream-lined method to get to the bottom of the FBI's conduct, as they allow Plaintiff to question directly those individuals with greatest personal knowledge of the issues.

Specifically, Plaintiff requests leave to depose FBI Special Agent Jacob B. Archer, who submitted the warrant application seeking leave of the court to conduct the excavation, (Exhibit A to Complaint, Dkt. No. 1-1), and who was present at the dig. Plaintiff also requests leave to depose the videographer pictured in Exhibit B, who also was present at the dig. Finally, Plaintiff seeks leave to depose Mr. Seidel about the FBI's processing of Plaintiff's FOIA request and the videotapes in particular. Each of these individuals likely possesses relevant facts that will shed light on the government's conduct in responding to Plaintiff's FOIA request.

Finally, Plaintiff requests that it be given a period of 60 days to complete this discovery. This will minimize any delay in the underlying litigation while ensuring adequate time to explore the questions raised by the FBI's conduct to date.

## **CONCLUSION**

Congress enacted the FOIA "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Cases like this one, where the FBI has made claims directly contradicted by photographic evidence in the record, test these principles and the system of checks and balances that Congress put in place. The absence of any videotapes the FBI created to document its excavation of a site that forensic

evidence suggested contained multiple tons of Civil War-era gold prevents both Plaintiff and the public from seeing and hearing what actually happened. It also again raises a very serious issue of possible destruction of critical evidence. To advance the principles on which the FOIA rests this Court should permit Plaintiff to proceed with the targeted discovery, as outlined herein, to answer a threshold and very serious question: Is the FBI complying with its obligations under the FOIA?

Pursuant to LCvR 7(m) counsel for Plaintiff consulted with counsel for the Defendant, who advised that Defendant opposes this motion.

                                              Respectfully submitted,

                                              */s/ Anne L. Weismann*
                                              Anne L. Weismann
                                              (D.C. Bar No. 298190)
                                              5335 Wisconsin Avenue, N.W., Suite 640
                                              Washington, D.C. 20015
                                              Phone: 301-717-6610
                                              Weismann.anne@gmail.com

Dated: June 10, 2022                              *Attorney for Plaintiff*