UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FINDERS KEEPERS USA LLC, | |
| *Plaintiff,* | |
| v. | Civil Action No. 22-0009 (APM) |
| U.S. DEPARTMENT OF JUSTICE, | |
| *Defendant.* | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

Defendant, the United States Department of Justice (the "Department"), by and through undersigned counsel, respectfully submits this opposition to Plaintiff's motion for sanctions (ECF No. 23). As discussed herein, Plaintiff's motion is devoid of merit and should be denied.

### BACKGROUND

On May 8, 2018, Plaintiff sent a FOIA request to the FBI, seeking, in part:

> Copies of all public records pertaining to FBI's investigation of an alleged missing shipment of gold purportedly buried in Pennsylvania state forest land in Dents Run, Elk County, Pennsylvania.

ECF No. 1-2 (FOIA request). On January 4, 2022, Plaintiff filed the Complaint, and thereafter, Defendant answered. ECF Nos. 1, 10. On April 18, 2022, after considering a joint status report and a motion for processing order filed by Plaintiff, the Court issued an Order granting plaintiff's motion as conceded in part. ECF No. 15. The Order provided, in part, that the FBI:

> process Plaintiff's FOIA request at a rate of 1,000 pages per month with the first production due in 30 days and productions thereafter every 30 days [. . .] provide Plaintiff all non-exempt responsive records at no cost to Plaintiff, and [. . .] implement Plaintiff's prioritization and first process the enviroscan report and the photographs before processing the remaining documents, with the exception of the videotapes, which shall be the subject of a further order.

ECF No. 15.

Subsequently, Defendant moved for, and was granted, a briefing schedule on the issue of the processing of videotape responsive to Plaintiff's FOIA request. ECF No. 16; Minute Order of Apr. 22, 2022. Thereafter, the parties briefed the issue. *See* ECF Nos. 17, 19, 21. On May 27, 2022, the Court issued an Order, granting in part Defendant's motion, and ordering that:

> Consistent with the goal of expeditiously getting Plaintiff the footage that matters the most, the court orders the FBI to review the four videotapes (if it has not done so already), and advise Plaintiff by June 8, 2022, whether any of the four videotapes depict the discovery, removal, or transport of gold (or anything else) from the Dents Run dig site. If a videotape contains such footage, Defendant shall begin processing such videotape from its start in 30-minute increments per month until completion, with the first release to occur by no later than July 15, 2022. If more than one videotape contains such depictions, the parties can confer on which videotape Defendant will process first. The processing of the second through fourth videotapes can take place in 15- minute increments, unless more expedited review is ordered by the court.

ECF No. 22.

In accordance with the Court's Order, on June 7, 2022, the FBI provided Plaintiff a list of the four videos that were serialized into the FBI's main investigative file. None of the videos on the list purport to show the removal or discovery of gold or dirt or anything else from the Dents Run Dig site. Defendant also had advised the Court that the FBI had located four videos responsive to Plaintiff's request totaling approximately 3 hours, 46 minutes, 52 seconds.[1] *See* ECF No. 17-2; *see also* Decl. of Michael G. Seidel, attached as Exhibit A hereto ("Seidel Decl.") ¶ 5. The source of these videos was not characterized. *See* ECF No. 17-2 ¶ 6 (noting that the videos were "responsive" to Plaintiff's request). Those four videos were the only videos that were in the only

---

[1] Despite having been provided to the FBI by Dennis Parada, an asserted co-owner of Plaintiff Finders Keepers, the four videos were responsive to Plaintiff's all-encompassing FOIA request 1 for "[c]opies of all public records pertaining to FBI's investigation[.]" *See* May 8, 2018, FOIA Request (ECF No. 1-2). Plaintiff now asserts that "Plaintiff has no interest in receiving these videotapes, which are already in its possession and do not bear directly on the subject of its FOIA request." Pl's Mot. at 6. If that is the case, it was incumbent on Plaintiff to indicate as much in its request as discussed below.

file found in the FBI's Central Records System that contained responsive records. Seidel Decl. ¶ 10 (describing file 374E-PH-2553532, which was indexed to the subject "Theft of United States gold, Elk County, PA").

On June 10, 2022, Plaintiff's counsel filed a motion for sanctions, ECF No. 23, and a motion for leave to conduct discovery, ECF No. 24. One of the exhibits presented a photograph of an individual purportedly at the Dent's Run dig site that showed an individual with a video camera and, in the background, staff with jackets bearing the letters FBI.

On receipt of this lead indicating that additional records may exist, the FBI, in a good faith effort to reasonably and properly respond to Plaintiff's records request, contacted the FBI Field Office in Philadelphia to inquire about who the individual in the photograph was and to make further inquiries about whether any videos of the Dents Run dig site exist other than the four videos already reported to the Court and to Plaintiff. Seidel Decl. ¶ 6. As a result of contacting the Field Office in Philadelphia, the FBI learned that an employee in its Office of Public Affairs took video while visiting the site. *Id.* ¶ 7. The FBI's FOIA office contacted that office and requested that it expeditiously conduct a manual search of its records. *Id.* That office did so and located 65 additional video clips that had been taken by its employee who was at the Dents Run dig site. *Id.* The Office of Public Affairs provided the 65 videos, totaling 44 minutes and 23 seconds, to the FBI's FOIA office for further processing and release to Plaintiff. *Id.* While conducting the additional search, the Office of Public Affairs confirmed that there were no additional videographers present at the Dents Run dig site, and these 65 video clips were all that were taken by the above noted employee. *Id.*

# ARGUMENT

Plaintiff now asserts that "the FBI and its counsel have recklessly and with indifference misled both Plaintiff and this Court about the nature of those [four] videotapes." Pl's Mot. at 6. The purported "misleading," says Plaintiff, is premised on the following:

> Had the FBI through its counsel made clear at the outset the contents of the four videotapes the parties could have avoided altogether briefing any issue concerning their production. But the FBI failed to do so and as a direct result of this failure, which displayed a "reckless indifference to the merits" of the FBI's [sic] claims . . . the parties unnecessarily briefed the issue of what videotape processing schedule the Court should impose.

*Id.* at 7.[2] Plaintiff seeks a fee award pursuant to 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Plaintiff also relies on the Court's inherent authority as a basis to impose sanctions.

To justify such an award, an attorney's conduct must show "evidence of recklessness, bad faith, or improper motive" in filings or proceedings that are deemed to be unreasonable and vexatious. *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 906 (D.C. Cir. 1998) (quoting *Travelers Ins. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1416–17 (5th Cir. 1994)). Thus, courts use section 1927 to sanction attorneys who abuse the judicial process with "repeated or singularly egregious" misbehavior. *United States v. Wallace*, 964 F.2d 1214, 1220 (D.C. Cir.

---

[2] Notwithstanding Plaintiff's apparent disappointment with the content of the videos responsive to its FOIA request, the precise wording of Plaintiff's FOIA request makes clear that there were to be no exclusions from the agency's production. To expect Defendant or its counsel to intuit Plaintiff's unspoken preferences and areas of interest is not a basis on which this Court should consider, let alone impose, sanctions. *See Charles v. Off. of Armed Forces Med. Exam'r*, 730 F. Supp. 2d 205, 216 (D.D.C. 2010) ("[T]o allow an agency to restrict the number of documents that it deems responsive during a FOIA search based on its interpretation of the plaintiff's purpose in making the request constitutes an unreasonable limitation.").

1992). "[T]he bar for imposing Section 1927 sanctions is high." *Hall v. Dep't of Homeland Sec.*, 219 F. Supp. 3d 112, 120 (D.D.C. 2016), *aff'd sub nom. Hall v. Dettling*, No. 17-7008, 2017 WL 2348158 (D.C. Cir. May 17, 2017).

"Federal courts possess certain 'inherent powers,' not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases, . . . [and] [t]hat authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger,* 137 S. Ct. 1178, 1186 (2017) (internal citation and quotation marks omitted); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (courts possess "inherent authority" to sanction litigants, including by assessing "attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons"). As with sanctions under section 1927, the Court must exercise its inherent authority "with restraint and discretion." *Chambers*, 501 U.S. at 44.

Plaintiff has failed to establish that either the FBI or its counsel acted with bad faith, unreasonableness, wantonness, or vexatiousness.

*First*, to the extent that Plaintiff alleges that "the FBI's actions here are part of a larger pattern of delay and obfuscation," Pl.'s Mot at 8, the Court should not entertain Plaintiff's attempts to expand section 1927. Simply put, "this Court cannot sanction conduct before a different tribunal pursuant to 28 U.S.C. § 1927." *LeFande v. Mische-Hodges*, Civ. A. No. 10-1857 (DLF/GMH), 2018 WL 6620129, at *12 (D.D.C. Dec. 10, 2018) (citing *Klein v. Weidner,* No. 08-398, 2017 WL 2834260, at *4 (E.D. Pa. June 30, 2017) (collecting cases from, among other courts, the Second, Fifth, and Ninth Circuits)). Thus, any reference to any actions taken, or not taken, during the administrative phase of the handling of Plaintiff's FOIA request, prior to the filing of the Complaint on January 4, 2022, should be ignored by the Court.

5

*Second*, Plaintiff argues that fees are warranted under section 1927 and the Court's inherent authority because Defendant litigated a production schedule for video tape processing. Plaintiff is wide afield.[3] The record here is far removed from the flagrant conduct of attorneys in cases where fees have been awarded under section 1927. *See, e.g., Hall v. Dep't of Homeland Sec.,* 219 F. Supp. 3d 112, 119–21 (D.D.C. 2016) (awarding attorney's fees under section 1927 against lawyer who "hijack[ed]" a closed case and filed several bad faith motions in a personal vendetta against another lawyer); *LaPrade*, 146 F.3d at 906 (awarding attorney's fees against a law firm that used an unknowing state court to obtain an *ex parte* order staying arbitration ordered by a federal court); *Fritz*, 818 F.2d at 925–26 (awarding attorney's fees against a lawyer who "repeatedly took actions which required [the defendant] to expend unnecessary time and money, even though he had no intention of pursuing this litigation").

The FBI has a duty to "'construe a FOIA request liberally,'" *Inst. for Justice v. IRS*, 941 F.3d 567, 572 (D.C. Cir. 2019) (quoting *Nation Magazine v. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)), and to "read FOIA requests 'as drafted,'" *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (quoting *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984)). Moreover, an agency is not "'required to divine a requester's intent.'" *Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 160 (D.D.C. 2018) (quoting *Am. Chemistry Council, Inc. v. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 62 (D.D.C. 2013)). The plain language of Plaintiff's FOIA request sought "[c]opies of all public records pertaining to FBI's investigation of

---

[3] Significantly, rather than proceed under Rule 11, which has a 21-day safe-harbor provision during which any perceived error can be remedied by the accused counsel and unnecessary sanctions litigation may be avoided, *see* Fed. R. Civ. P. 11(c)(2), Plaintiff elected to burden the Court and the opposing party by proceeding in a manner that sidesteps pre-litigation interactions that occur directly between the parties and which can resolve, and in this case should have resolved, Plaintiff's misapprehensions that were causing Plaintiff concern.

an alleged missing shipment of gold purportedly buried in Pennsylvania state forest land in Dents Run, Elk County, Pennsylvania," and the four videos in FBI's investigative file constituted such "public records" and accordingly were responsive to Plaintiff's request. Notwithstanding Plaintiff's view that the FBI should have surmised that Plaintiff would not want these particular public records, by taking steps to provide them to Plaintiff, the agency was simply fulfilling its obligation to provide records responsive to the request as Plaintiff framed it. Taking steps to facilitate the agency fulfilling its statutory duties is no basis to sanction Defendant or its counsel. Nor does it provide any colorable basis in law for a requester to file a motion for sanctions.

*Third*, rather than establishing the bad faith that can warrant a sanctions award, in fact Plaintiff's unnecessary motion has merely reconfirmed the FBI's good faith in its handling of Plaintiff's request and this litigation. Promptly upon receiving from Plaintiff a concrete lead indicating that FBI's initial search might not have uncovered all responsive videos, the FBI made further inquiries based on that lead and wound up discovering that an employee of the FBI's Office of Public Affairs had in fact created videos of the dig site. Seidel Decl. ¶ 7. Those videos are now being processed in response to Plaintiff's request. *Id.* ¶ 11. That FBI's initial search did not identify the Office of Public Affairs records does not mean that the agency's first efforts were legally insufficient. A search is not inadequate merely because it failed to "uncover every document extant," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). To the contrary, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 314, 315 (D.C. Cir. 2003). On summary judgment, the parties will brief and the Court will examine the sufficiency of the FBI's search. Yet, the fact that the FBI undertook substantial additional search efforts in response to a lead provided by Plaintiff through this

7

litigation further confirms the agency's good faith, both in this lawsuit and in the handling of Plaintiff's underlying FOIA request. Thus, the agency's good faith efforts further demonstrate that the sanctions Plaintiff seeks are entirely unwarranted.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's Motion for Sanctions.

Dated: July 1, 2022

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

BRIAN P. HUDAK
Chief, Civil Division

By:   */s/ T Anthony Quinn*
T. ANTHONY QUINN
D.C. Bar No. 415213
Assistant United States Attorney
Civil Division
601 D St., NW
Washington, D.C. 20530
(202) 252-7558
tony.quinn2@usdoj.gov

*Counsel for Defendant*