UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FINDERS KEEPERS USA LLC, | |
| *Plaintiff,* | |
| v. | Civil Action No. 22-0009 (APM) |
| U.S. DEPARTMENT OF JUSTICE, | |
| *Defendant.* | |

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)  I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division, Federal Bureau of Investigation ("FBI"), Winchester, Virginia. I joined the FBI in September 2011, and prior to my current position, I was the Assistant Section Chief of RIDS from June 2016 to July 2020; Unit Chief, RIDS Litigation Support Unit, from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of the General Counsel, Freedom of Information Act ("FOIA") Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act ("FOIPA") litigation cases nationwide. Prior to joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration, from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIPA matters and served as agency counsel representing the DEA in FOIPA suits nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various assignments from 1994 to September 2006 culminating in my assignment as Chief, General Litigation

Branch, U.S. Army Litigation Division, where I oversaw FOIPA litigation for the U.S. Army. I am an attorney licensed in the State of Ohio and the District of Columbia.

(2)  In my official capacity as Section Chief of RIDS, I supervise approximately 242 FBI employees, supported by approximately 90 contractors, who staff a total of ten (10) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. Statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)  Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552. Specifically, I am aware of the FBI's handling of Plaintiff's FOIPA request.

(4)  The FBI submits this declaration in support of Defendant's Opposition to Plaintiff's Motion for Leave to Conduct Discovery.

(5)  On April 26, 2022, I informed the Court that the FBI had located four (4) videos responsive to Plaintiff's request totaling approximately 3 hours, 46 minutes, 52 seconds (*see* Seidel Declaration, ECF No. 17-2). I did not characterize the source of these videos (*see id.* ¶ 6 (merely noting that the videos were "responsive" to Plaintiff's request)). If, following provision

in the interim of information about these videos' source, Plaintiff does not wish to have the FBI process those four videos for release, RIDS will adhere to such narrowing by Plaintiff of its request. The source of the four videos was Dennis Parada, who I understand is affiliated with Plaintiff.

(6)     Plaintiff subsequently inquired about the potential existence of additional videos. Plaintiff also provided a photograph of an individual with a video camera at the Dents Run dig site. Promptly upon receipt of this concrete photographic lead indicating that additional records may exist, RIDS, in a good faith effort to reasonably and properly respond to Plaintiff's records request, contacted the FBI Field Office in Philadelphia to inquire about who the individual in the photograph was and to make further inquiries about whether any videos of the Dents Run dig site exist other than the four videos already reported to the Court and to Plaintiff. (The manner in which the four videos had earlier been located is described below; those four videos are the only ones that were located in the only file found in the FBI's Central Records System that contained responsive records. *See infra* ¶ 10 (describing file 374E-PH-2553532, which was indexed to subject Theft of United States gold, Elk County, PA).)

(7)     As a result of contacting the Field Office in Philadelphia, RIDS learned that an employee of the Office of Public Affairs ("OPA") took video while visiting the site. One of the records produced to Plaintiff indicates that OPA was escorted on the site, but there was nothing within the file that indicated OPA had created or produced any federal records that would be responsive to Plaintiff's request, nor did the file contain any written indication that videos had been taken during OPA's presence at the dig site. Therefore, the FBI's initial search efforts had not led RIDS to learn of the possibility that OPA may have created any potentially responsive records, and the FBI initially reasonably believed that any responsive records would have been in

the file that had been located in the Central Records System. Once the FBI had a concrete lead suggesting the existence of additional records, RIDS – in a good faith effort to fulfill its responsibility to conduct a reasonable search for records responsive to Plaintiff's request – expanded its search. RIDS contacted OPA and requested that OPA expeditiously conduct a manual search of its records. OPA did so and located 65 additional video clips that had been produced by an OPA employee who was at the Dents Run dig site. OPA provided a copy of the 65 videos, totaling 44 minutes and 23 seconds, to RIDS for further processing and release to the Plaintiffs. While conducting the additional search, OPA confirmed that there were no additional videographers present at the Dents Run dig site, and these 65 video clips were all that were taken by the OPA employee.

(8)     The FBI's initial response to Plaintiff's records request followed the FBI's general FOIPA practice of first searching the Central Records System ("CRS") to determine if the FBI has records about a particular subject. The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its mission. The CRS spans the entire FBI organization and encompasses the records of FBI Headquarters, FBI field offices, and FBI legal attaché offices worldwide.

(9)     The CRS consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subject categories. For identification and retrieval purposes across the FBI, when a case file is opened, it is assigned an individual Universal Case File Number. Within each case file, pertinent documents of interest are "serialized," or assigned a document number in the order in which the document is added to the file, typically in chronological order. FBI employees may index information in the CRS by individuals (persons),

4

by organizations (entities, places, or things), and/or by event (e.g., a terrorist attack or bank robbery). Indexing information in the CRS is done at the discretion of FBI investigators when information is deemed of sufficient significance to warrant indexing for future retrieval. Accordingly, the FBI does not index every individual name or other subject matter in the general indices. In situations where the subject matter of a FOIA request does not readily lend itself to a standard CRS index search, it is the FBI's practice to conduct a more individualized query (outside the CRS) of specific FBI divisions and offices that, based on the subject matter of the request, the FBI's FOIA professionals deem reasonably likely to possess any potentially responsive records. Moreover, 1) if the FBI FOIA professionals develop or learn of a logical lead, whether at the outset of a search or as the search progresses, that suggests that a particular portion of the Bureau may have responsive records, or 2) FOIA staff otherwise reasonably conclude that a specific division or unit would likely maintain potentially responsive records, or 3) materials found elsewhere within the Bureau suggest that a particular division or unit is reasonably likely to possess responsive records, the FBI will request that such division or unit perform a manual search of records held by personnel within the respective division or unit.

(10)   The FBI's CRS search in response to Plaintiff's request identified only one file containing responsive records: 374E-PH-2553532. This file was indexed to subject "Theft of United States gold, Elk County, PA." A further review of this file confirmed that it contained records responsive to Plaintiff's request. No additional files were identified as a result of this initial search effort.[1]

(11)   Upon confirmation of the responsive nature of this file, RIDS retrieved all records within the file for further processing and release to the Plaintiff pursuant to the FOIA. As a

---

[1] A more detailed explanation of the FBI's search efforts will be provided at the briefing stage.

5

result of this initial search effort, RIDS ingested all the records contained within the responsive file for FOIA processing and inventoried the media located in the file. The four videos originally reported were the only media located in the file at the time of this inventory. The 65 video clips subsequently located by OPA were not located in the investigative file at this initial stage, nor were there any indications that they even existed; hence my prior statements were offered in good faith and based on the information available to me at that time. The 65 video clips from OPA have now been ingested for FOIA processing and are being processed in conformity with the practices described in my prior declarations in this case and in accord with the Court's May 27, 2022 order.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1ST day of July 2022.

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia