IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FINDERS KEEPERS USA LLC,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**U.S. DEPARTMENT OF JUSTICE,** )<br>)<br>Defendant. )<br>_____ ) | Civil Action No. 22-0009 (APM) |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION
FOR LEAVE TO CONDUCT DISCOVERY**

Plaintiff seeks targeted discovery to resolve the issue of the FBI's apparent bad faith, raised by its own conduct in this litigation in repeatedly ignoring the evidence of record that additional videotapes responsive to Plaintiff's Freedom of Information Act ("FOIA") request exist. In opposing discovery Defendant U.S. Department of Justice ("DOJ") ignores this context, insisting that discovery is premature because DOJ has yet to move for summary judgment and the factual predicate for discovery is, in any case, not present here. DOJ is wrong on both counts.

With its motion Plaintiff is not, as DOJ suggests, challenging the overall reasonableness and adequacy of the FBI's searches. That DOJ has yet to move for summary judgment and present detailed declarations outlining the searches the FBI conducted—facts on which DOJ places great weight—misunderstands the basis for Plaintiff's motion.

From the outset of this litigation Plaintiff has identified the presence of an FBI videographer at the Dents Run dig, Complaint ¶ 38 (ECF No. 1), a fact about which DOJ initially claimed to lack knowledge. Answer ¶ 38 (ECF No. 10). As Plaintiff noted previously, DOJ claimed to lack knowledge about most of the factual allegations in the Complaint even though they pertained to an event undertaken by the FBI, raising a question about the FBI's compliance

with its obligation to conduct a good-faith inquiry. Just as significant, Plaintiff has long contested the FBI's claim to have located only four videotapes totaling less than four hours, pointing out that the FBI initially claimed to have 17 videotapes, a number that mysteriously became four.

With this issue still unresolved[1] Defendant requested that the Court enter a videotape processing schedule that would allow the FBI to process only 15 minutes of videotape per month (ECF No. 17). The FBI argued this timeline was necessary in part because of the challenges of processing "outdated, analog formats, and digital files "from third party sources[.]" Declaration of Michael G. Seidel at ¶¶ 16, 17 (ECF No. 17-2). On May 9, 2022, Plaintiff filed its opposition to the requested schedule. In arguing for a shorter processing schedule Plaintiff pointed out, among other things, that the videotapes at issue "*were created by the FBI itself in 2018.*" Plaintiff's Opposition to Defendant's Motion for a Video Processing Schedule at 12 (ECF No. 19) (emphasis added). In support Plaintiff cited to a photograph depicting the FBI videographer at the Dents Run site on March 13, 2018, at 10:04 a.m. *See* Exhibit A to Plaintiff's Opposition to Defendant's Motion for a Videotape Processing Schedule (ECF No. 19-1). DOJ's reply brief (ECF No. 21) and its supporting declaration (ECF No. 21-1) completely ignored this evidence and failed to address *in any respect* Plaintiff's claim that the videotapes at issue originated with the FB. Instead, the FBI repeated its claim that "there are four (4) responsive videos[.]" Second Declaration of Michael G. Seidel at ¶ 22 (ECF No. 21-1).

---

[1] In its opposition to Plaintiff's motion for discovery the FBI claims, without substantiation, that this issue is "now-fully aired," and that Plaintiff merely misunderstood what the FBI initially claimed about the number of responsive videotapes. Defendant's Opposition to Plaintiff's Motion for Leave to Conduct Discovery at 6 ("D's Discovery Opp.") (ECF No. 27). But the FBI's numbers still do not add up, and the FBI cannot explain away its answer admitting that its letter of August 6, 2019 advised Plaintiff that the FBI had located "17 video files responsive to Plaintiff's request." Answer ¶ 51 (ECF No. 10).

Ultimately the Court ordered the FBI to review the four videotapes it claimed constituted the complete body of responsive videotapes and advise Plaintiff "whether any of the four videotapes depict the discovery, removal, or transport of gold (or anything else) from the Dents Run dig site." Order, May 27, 2022 (ECF No. 22). With its Court-ordered notice the FBI advised Plaintiff for the first time that all the FBI's responsive videotapes were provided to the FBI by Dennis Parada, co-owner of Plaintiff Finders Keepers, well before the Dents Run dig. Indeed, one of the videos consists of an episode broadcast by the *History Channel* on March 15, 2013— five years before the Dents Run dig. *See* Exhibit A to Memorandum of Points and Authorities in Support of Plaintiff's Motion for Leave to Conduct Discovery (ECF No. 24-2). Once again in describing the responsive videotapes the FBI ignored the evidence Plaintiff proffered of its own videographer present for the Dents Run dig in March 2018.

Only after Plaintiff moved for sanctions and discovery on June 10, 2022, based on the FBI's failure to account for the videotapes created by the FBI's videographer did the FBI even attempt to locate the missing tapes. In a Court-ordered Joint Status Report submitted five days *after* Plaintiff filed its motions the FBI through its counsel stated, for the first time, that the FBI had conducted an additional search "[u]pon receipt of this information," and located 65 "video clips" in the FBI's Office of Public Affairs. Joint Status Report, June 15, 2022 at ¶ 9 (ECF No. 25). In fact, however, the FBI had received this information from Plaintiff a month earlier and was on notice about the presence of the FBI's videographer from the Complaint filed in January 2022. Yet the FBI failed to act until facing a sanctions motion.

In that same report the FBI, again through its counsel, claimed to have "no further information or leads that would indicate any other videos of the Dent's Run dig site were made by or are in the possession of the FBI." *Id.* ¶ 10. But the FBI failed to detail any steps it had

taken to confirm the absence of any additional tapes, a significant failure given the FBI's past conduct of ignoring obvious leads. Further, the description DOJ provided of the newly discovered video clips is remarkably fails to include the date or dates on which the clips were recorded; whether they are from one or more video cameras; and whether the listing of video clips is in chronological order. If, for example, the videographer was present on only the first day of the dig it raises the obvious question of why the FBI had no interest in recording the events of day two, when it was most likely that the FBI would finally uncover any existing gold given its decision to stop early on day one of the dig before reaching the likely depth where the gold was buried. Once the FBI has provided Plaintiff these video clips with this information a comparison can again be made between what the FBI represents are the only videotapes it created and photographs in Plaintiff's possession that may reveal otherwise.

In any event, as representations by FBI's counsel—not the FBI itself through declarations submitted under penalty of perjury—these statements do not provide an adequate basis to conclude that the FBI accurately and fully complied with its obligation to locate and process all responsive videotapes. *See, e.g.*, Fed. R. Civ. P. 56(c)(4) (requiring declarations in support of summary judgment motions to be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant it competent to testify on the matters stated."). The assertions by FBI's counsel here meet none of these requirements.

To be sure, with its opposition to Plaintiff's motion for sanctions (ECF No. 28), filed *after* its opposition to Plaintiff's discovery motion, the FBI submitted another declaration from Michael G. Seidel (ECF No. 28-1) with new information about the FBI's search that was never before shared with Plaintiff. Curiously, however, DOJ does not cite this declaration as a factual basis for the claims it makes in its opposition to discovery. In any event, the declaration contains

4

demonstrably false information: specifically, that the FBI acted promptly after receiving a "concrete photographic lead," Seidel Decl. at ¶ 6. As discussed above, the FBI actually received this "lead" on May 9, 2022, yet did nothing until after Plaintiff moved for sanctions and discovery on June 10, 2022.[2]

As the timeline here makes clear, Plaintiff's discovery motion focuses not on the adequacy of the FBI's overall search, but on the FBI's handling of responsive videotapes and its statements about those videotapes in two declarations it proffered to the Court. Mounting evidence suggests that on the issue of the videotapes—which the Court itself has treated separately from other responsive documents—the FBI is not complying in good faith with its FOIA obligations and has misled both Plaintiff and this Court. Despite Plaintiff repeatedly bringing to the FBI's attention the presence of a videographer at the Dents Run dig, the FBI insisted the only videotapes in its possession were those provided by Plaintiff. The FBI's declarant in two separate declarations declared under penalty of perjury that the FBI had only four tapes, Seidel Decl. at ¶ 4, Second Seidel Decl. at ¶ 22, even after Plaintiff submitted into evidence the photograph showing an FBI videographer at the dig's site. All this raises the obvious question of what the FBI was attempting to hide.[3]

---

[2] In his latest declaration Mr. Seidel also claims that the belatedly discovered video clips "were all that were taken by the OPA employee." Seidel Decl. at ¶ 7. In support he merely cites to "OPA confirm[ing]" this information, with no specifics on how it did so and the source of this information. As such it is inadmissible hearsay.

[3] Further evidence of the FBI's bad faith includes its failure to tell Plaintiff or the Court that the videotapes at issue originated with Plaintiff, were created well before the FBI conducted its excavation at Dents Run, and in any event are not even responsive to Plaintiff's FOIA request. See Memorandum of Points and Authorities in Support of Plaintiff's Motion for Sanctions, June 10, 2022, at 6 (ECF No. 23-1).

Finally, DOJ falsely claims that through discovery Plaintiff seeks to learn "the identities of those present at the dig[.]" D's Discovery Opp. at 8. To the contrary, Plaintiff described two of the three individuals it seeks to depose—FBI Special Agent Jacob B. Archer and the videographer depicted in the picture plaintiff submitted into evidence—as present at the dig merely to reinforce their relevance to the issues the FBI's conduct raises. *See* Memorandum of Points and Authorities in Support of Plaintiff's Motion for Leave to Conduct Discovery at 7-8. Indeed, had Plaintiff sought to depose individuals with no connection to the Dents Run dig the FBI undoubtedly would have challenged their relevancy.

## CONCLUSION

The FBI's "repeated[] and gross[] mishandl[ing] [of] materials responsive to" Plaintiff's request raises a sufficient question of bad faith by the FBI as to justify targeted discovery. *Judicial Watch v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 28, 30 ((D.D.C. 1998). The issue here is not simply the adequacy of the FBI's search, but the veracity of its declarations and statements offered to address questions raised by the Court, and the FBI's repeated failure to address evidence that additional videotapes exist. Under these circumstances the Court should exercise its broad discretion and grant Plaintiff's request for targeted discovery. The issue is ripe for resolution now; delaying its resolution until the parties file summary judgment motions is both unwarranted and unwise, as it will needlessly delay Plaintiff's prompt access to records of considerable public import, and leave unresolved the question of how many additional responsive videotapes in fact exist. For all these reasons, the Court should grant Plaintiff's motion for targeted discovery.

Respectfully submitted,

*/s/ Anne L. Weismann*
Anne L. Weismann

                                                  (D.C. Bar No. 298190)
                                                  5335 Wisconsin Avenue, N.W., Suite 640
                                                  Washington, D.C. 20015
                                                  Phone: 301-717-6610
                                                  Weismann.anne@gmail.com

Dated: July 8, 2022                           *Attorney for Plaintiff*