IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FINDERS KEEPERS USA LLC,** | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 22-0009 (APM) |
| **U.S. DEPARTMENT OF JUSTICE,** | ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Preliminary Statement**

Plaintiff's motion for partial summary judgment and supporting memorandum demonstrated the multiple ways in which the U.S. Department of Justice ("DOJ") and its subcomponent the FBI failed to justify withholding three categories of information. The FBI improperly relied on Exemption 5 and the deliberative process privilege to withhold purely factual material stripped of any analysis and untethered from any decision-making process. Citing FOIA Exemptions 6 and 7(C) the FBI withheld the authors of the Enviroscan Report, notwithstanding that Plaintiff's associate suggested that the FBI use Enviroscan to perform an analysis of the Dents Run site and Plaintiff's owners accompanied Enviroscan when it performed that analysis. The FBI justified its withholding of operational plans under Exemption 7(E) with generic language lacking any meaningful description that would permit the Court to conclude the exemption claim is proper. Moreover, the unique context here, an excavation for gold by the FBI that is unlikely to ever reoccur, undermines any claim that disclosing the plans would risk future circumvention of the law, as Exemption 7(E) requires.

In response the FBI has failed to take issue with any of these arguments in a meaningful way. Instead, the agency relies on lengthy string cites to cases that, at most, explain the prerequisites for the exemptions but provide no analysis of the facts presented here or reason to uphold the FBI's exemption claims. Nor has the FBI supplemented its initial supporting declarations to fill in the missing blanks.[1] As a result, the FBI's limited showing falls far short of satisfying its evidentiary burden under the FOIA.

1.     *Challenged Exemption 5 Withholdings*

Relying on Exemption 5 and the deliberative process privilege the FBI has withheld purely factual observations, recorded as notes and sketches, made by FBI agents during a preliminary site visit to Dents Run. Even if some of this raw material eventually found its way into a more formal write-up it does not qualify for Exemption 5 protection.

The D.C. Circuit has long recognized that

> to come within the privilege [deliberative process] and thus within Exemption 5, the document must be a direct part of the deliberative process *in that it makes recommendations or expresses opinions on legal or policy matters*.

*Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975) (emphasis added). Following this rationale, courts have found that "raw research data" is not subject to Exemption 5 protection because it "is not a recommendation, is not subject to alteration on further review . . . is not selective," and its disclosure would not expose an agency's deliberative process. *Southwest Ctr. for Biological Diversity v. U.S. Dep't of Agric.*, 170 F. Supp. 2d 931, 941 (D. Ariz. 2000). *See also Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 917, 922-23 (9th Cir. 1992) (because

---

[1] Notably the FBI also has failed to supplement the factual record with respect to its claims to have conducted an adequate search and properly produced all responsive, non-exempt records, notwithstanding the numerous deficiencies Plaintiff identified that remain unrebutted.

release of raw census data would not reveal agency's decision-making process it was not protected from disclosure by the deliberative process privilege).

Here the FBI has invoked the deliberative process privilege to protect what it labels as "unvarnished notes" and site sketches, 4th Seidel Decl. at ¶ 42 (ECF No. 37-1), the precise kind of raw data courts have recognized fails to qualify for Exemption 5 protection. As purely factual observations memorialized in sketches and notes, the withheld material is factual, not deliberative, and its release would reveal little, if anything, about the FBI's decision-making process.

Nor does the fact that the FBI included at least some of this raw data in a final document of some kind transform it into deliberative material protected by Exemption 5. *See Cornucopia Inst. v. U.S. Dep't of Agric.*, No. 16-148 (RC), 2018 WL 4637004, at *6 (D.D.C. Sept. 27, 2018) (mere fact of including factual information in a report where that information "played some unspecified role in the agency's decisionmaking processes does not suffice to show that the deliberative process applies."). If the withheld purely factual material itself is not deliberative it does not become deliberative simply by its inclusion in a report. Following this rationale, courts have rejected claims that the deliberative process privilege protects photographs taken by agency officials during a site visit to organic dairies, *id.*, or photographs attached to a report, *Lacy v. U.S. Dep't of the Navy*, 593 F. Supp. 71, 78 (D. Md. 1984). As the *Cornucopia Inst.* court reasoned, "[i]t cannot be that the mere act of taking a photograph—an act during which the photographer necessarily elects to capture only certain images—alone renders the photograph part of the deliberative process." 2018 WL 4637004, at *6. Similarly, facts included in a task force report where the mission of the task force was "to investigate the facts surrounding certain events," *Playboy Enterprises, Inc. v. Dep't of Justice*, 677 F.2d 931, 935 (D.C. Cir. 1982) (citation

omitted), also fell outside the deliberative process privilege. *Id.* at 936-37. This is because Exemption 5 "does not authorize an agency to throw a protective blanket over all information" such as "[p]urely factual reports[.]" *Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 238 (D.C. Cir. 2008).

Under this precedent the FBI improperly withhold the raw data at issue here—notes and sketches—because its disclosure would reveal nothing about the FBI's deliberative process. Instead, like the photographs at issue in *Cornucopia Inst.* and *Lacy*, the notes and sketches are easily segregable factual material with no facial connection to any deliberative process. *See also Citizens for Responsibility & Ethics v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 160 (D.D.C. 2011) (requiring release of "easily segregable" portions of agency memorandum not discussing policy).

The FBI nevertheless insists the withheld factual observations fall within Exemption 5 because they are part of a decision that "is always in progress" and constitute a "draft . . . until finalized in the official record[.]" D's Opp. at 10. This makes no sense. The withheld notes and sketches that recorded what the agents saw on a particular day at Dents Run will not themselves change; they remain the contemporaneous recordings from that site visit. That they predate a so-called "final agency decision[]," D's Opp. at 11, does not alter their static state as written observations made by specific FBI agents. Untethered to any agency policy or decision-making process, they fall outside the protection of Exemption 5.

In any event, the FBI has failed to describe any decisional process of which these withheld materials were a part. Instead, the agency refers cryptically to "the creation of a formal report," Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("D's Opp.")

4

(ECF No. 42), at 10, that the FBI declarant describes as a "final FD-302 statement." 4th Seidel Decl. ¶ 61. In another context DOJ has defined FD-302s as "the forms used by the FBI *to record investigative activity*, particularly, although not exclusively, the results of interviews." U.S. Dep't of Justice, Office of the Inspector General, "An Investigation of the Belated Production of Documents in the Oklahoma City Bombing Case," (Mar. 19, 2002), at Chapter Two (emphasis added), available at https://oig.justice.gov/sites/default/files/archive/special/0203/chapter2.htm. As this definition makes clear, FD-302s simply record observed investigative activities as part of the FBI's evidence-gathering process. As such, they are separate and distinct from any analysis the FBI conducts about the quality and significance of those activities in considering whether to bring a prosecution or take some other prosecutorial action. It necessarily follows that even if the FBI included any of the material withheld here in a "final" FD-302, the material itself and any report that included the material do not qualify as a protected agency decision-making process within the meaning of the deliberative process privilege.

      The FBI also has failed to meet the foreseeable harm requirement. Plaintiff explained in its opening brief that the FBI's claims of harm simply parrot "the generic rationale for the deliberative process itself," and lack a "focused and concrete demonstration" that the specific type of "material at issue will, in the specific context of the agency action at issue, actually impede *those same agency deliberations going forward*." *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350, 370 (D.C. Cir. 2021) (emphasis added). The FBI's opposition brief offers only these same generic claims of harm, with no connection to "*the same agency deliberations* going forward." *Id.* (emphasis added). Indeed, the FBI describes no particular agency action or type of investigation at all, relying instead on the generic category of "notetaking." D's Opp. at 11. This does not satisfy its evidentiary burden to link the disclosure of

the documents at issue to harm to future deliberations over the same kind of investigative process. Further, the idea that disclosing an agent's contemporaneous observations memorialized in notes and sketches would somehow chill that agent's willingness to make factual observations in the future defies common sense.

For all these reasons, the FBI cannot properly rely on Exemption 5 to withhold the records at Bates Nos. 1142-1146 and 2066-2071. If the Court is not prepared to order disclosure of these withholdings on the current record, however, it should at least review these documents *in camera* to determine if they satisfy the criteria of Exemption 5. *See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of* Justice, 538 F. Supp. 3d 124, 142 (D.D.C. 2021) (court conducted *in camera* review to determine if DOJ properly withheld responsive documents); *Rosenberg v. U.S. Dep't of Defense*, 342 F. Supp. 3d 62, 79 (D.D.C. 2018) (same). The small number of documents at issue makes *in camera* review a preferred option if the Court has remaining questions on the propriety of DOJ's Exemption 5 withholdings. *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (number of withheld documents is "important[] factor" in deciding whether to conduct *in camera* review).

    2.    *Challenged Exemption 6 and 7(C) Withholdings*

The FBI also has failed to justify withholding the names of the individuals who authored the Enviroscan Report on privacy grounds pursuant to FOIA Exemptions 6 and 7(C). As Plaintiff explained in its opening brief, the FBI has never hidden Enviroscan's role in this matter from Plaintiff. The FBI allowed Plaintiff's owners to accompany Enviroscan employees when they performed their onsite survey at Dents Run. *See* Complaint, ¶ 26. In fact, Plaintiff's associate recommended that the FBI hire Enviroscan to perform a more sophisticated analysis of what was buried at Dents Run based on the company's expertise and access to the highly sophisticated

(and highly accurate) gravimeter. *Id.* at ¶¶ 24, 25. And once that analysis was completed, the FBI shared those results with Plaintiff, *id.* at ¶ 27, and touted the results and accuracy as a central ground to grant its application for a warrant to excavate at Dents Run. *See* Exhibit A to Complaint (ECF No. 1-1).

Given these facts, the FBI's claim that identifying the names of the report's authors "could subject them to unofficial inquiries for information related to their assistance," D's Opp. at 13, rings particularly hollow.[2] There is no support for the notion that such "unofficial inquiries" would subject these individuals to harm in any way, or undue harassment. But the disclosure of their identities would permit Plaintiff and the public to fully evaluate the expert report they authored and provide a possible basis to better understand the dramatic inconsistencies between the gravimeter scan results and the FBI's claim to have found nothing whatsoever from its excavation at Dents Run. Accordingly, the names of the individuals who authored the Enviroscan Report must be disclosed.

    3.    *Challenged Exemption 7(E) Withholdings*

The D.C. Circuit has emphasized that in defending withholdings under Exemption 7(E), an agency must demonstrate "*logically* how the release of [the requested] information might create a risk of circumvention of the law." *Mayer Brown, LLP. v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (internal quotations omitted) (emphasis added). Such logic is completely lacking here. Instead, the FBI's justification for withholding operational plans pursuant to FOIA Exemption 7(E) rests on broad generalities about the need to protect generic "non-public investigative techniques and procedures[.]" D's Opp. at 14. At best, the FBI claims that

---

[2] The FBI inaccurately suggests Plaintiff seeks "contact information" for the report's authors. D's Opp. at 13. To the contrary, Plaintiff challenges only the redaction of their names.

operational plans "often" include the kinds of operational details and strategies that Exemption 7(E) may protect, *see id.*, without identifying specifically what they are and whether the operational plans at issue contain those details and strategies.

The FBI's supporting declaration also lacks the requisite details, stating only that knowledge of some unidentified techniques and procedures could bring other treasure hunters "in close proximity to the FBI investigators[.]" 4th Seidel Decl. ¶ 93. Even with this very limited justification, however, the FBI fails to explain logically how the mere proximity of others to the Dents Run excavation would allow criminals and others to circumvent the law. This hardly qualifies as even a remote possibility, much less a likely result from disclosing the operational plans here of a once-in-a-lifetime search for buried gold at least as to the FBI.

At bottom the FBI essentially is arguing for a blanket exemption from the FOIA's disclosure requirements for all its operational plans without considering whether disclosure of specific plans would cause specific foreseeable harm. The FOIA Improvement Act of 2016, however, forecloses such an approach by codifying a "foreseeable harm" standard that permits withholdings under the FOIA only if "the agency reasonably foresees that disclosure would harm an interest protected by the exemption." 5 U.S.C. § 552(a)(8)(A). Here the FBI has not made the required showing of a direct link between revealing the operational plans at issue and harm to this precise kind of investigation in the future. There is no evidence in the record that the FBI has ever before conducted an excavation to locate missing Civil War era gold or is likely to do so in the future. The uniqueness of the so-called "investigation" at issue forecloses the FBI's argument that revealing operational details of how it conducted that excavation would cause a harm against which Exemption 7 protects.

Finally, should the Court conclude that it cannot order disclosure on the current record it should review *in camera* the documents containing the withheld details of the FBI's operational plans for the reasons discussed above.

## **CONCLUSION**

For the foregoing reasons and those set forth in Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Cross-Motion for Partial Summary Judgment, the Court should grant Plaintiff's motion and deny Defendant's Motion as to the three categories of contested documents.

Pursuant to Local Rule 7(f) Plaintiff respectfully requests that the Court schedule an oral hearing on the pending motions.

                Respectfully submitted,

                */s/ Anne L. Weismann*
                Anne L. Weismann
                (D.C. Bar No. 298190)
                5335 Wisconsin Avenue, N.W., Suite 640
                Washington, D.C. 20015
                Phone: 301-717-6610
                Weismann.anne@gmail.com

Dated: February 22, 2023          *Attorney for Plaintiff*