UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FINDERS KEEPERS USA LLC,<br><br>                  Plaintiff,<br><br>         v.<br><br>DEPARTMENT OF JUSTICE,<br><br>                  Defendant. | Civil Action No. 22-0009 (APM) |

## **SUPPLEMENTAL MOTION FOR  SUMMARY JUDGMENT**

Defendant, the United States Department of Justice, ("The Department") and its component, the Federal Bureau of Investigation ("FBI"), respectfully renews its motion pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting summary judgment in the FBI's favor on the grounds that no genuine issue as to any material fact exists and that Defendant has satisfied all of its obligations pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in response to Plaintiff's requests for information, and therefore, Defendant is entitled to judgment as a matter of law.  In support of this motion, the Court is respectfully referred to Defendant's Supplemental Declaration of Michael Seidel ("Fifth Seidel Decl."), Defendant's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment, and Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment.

On September 27, 2023, the Court issued a Memorandum Opinion and Order denying in part and granting in part the Defendant's Motion for Summary Judgment under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552.  Specifically, the Court granted Defendant's motion for summary judgment regarding its asserted Privacy Act Exemptions 6 and 7(C) but denied the motion with regard to the adequacy of the search.  Memorandum and Opinion (Order.) at 20, ECF No. 46.  This Court then directed Defendant to provide additional information concerning the following: (1) identify the search terms used for the second FBI search, (2) identify the cut-off date used for the second search and justify the reasonableness of that date (3) confirm whether all files likely to contain responsive materials were searched, ( 4) explain how the Office of Public Affairs (OPA) conducted its search for the video clips produced, and (5) identify the actual investigative techniques the FBI seeks to protect within the Operational Plan.

Finally, the FBI reprocessed the FBI Special Agent (FBI SA) handwritten notes located at Bates pages 1142-1146, 2065-2071 and 2 131-2146 to segregate additional information. See Order at 15.  Since the Court's September 27, 2023, Order the FBI reprocessed a total of 51 responsive pages of handwritten notes: 31 Released in Part (RIP), and 12 Withheld in Full (WIF). ¶ 17.  Defendant now renews and supplements its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, because as the supplemental declaration and Supplemental Vaughn Index show, no genuine issue of material fact exists and Defendant has satisfied all of its obligations pursuant to the Freedom of Information Act.

*        *        *

As demonstrated by the attached Statement of Material Facts Not in Genuine Dispute and the following Memorandum of Points and Authorities, Defendant is entitled to judgment as a matter of law as it has produced all documents responsive to Plaintiff's request and subject to FOIA, and properly withheld information pursuant to the statutory exemptions.

Respectfully Submitted,

MATTHEW M. GRAVES, D.C. Bar # 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:  /s/_____
 BENTON PETERSON, Bar #1029849
Assistant United States Attorney
601 D Street, N.W.
Washington, DC 20530
(202) 252-2534
*Benton.Peterson@usdoj.gov*
*Counsel for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FINDERS KEEPERS USA LLC,

        Plaintiff,

      v.

DEPARTMENT OF JUSTICE,

        Defendant.

Civil Action No. 22-0009 (APM)

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Finders Keepers, LLC, brought this Freedom of Information Act ("FOIA") action against the Department of Justice (the "Department"), and in particular its component, the Federal Bureau of Investigation ("FBI"), seeking records relating to an allegedly missing shipment of gold purportedly buried in Dents Run, Elk County, Pennsylvania.

As supported by this memorandum, and the accompanying declaration,[1] the Department conducted reasonable searches and properly withheld documents, or portions of documents, under FOIA Exemptions 7(E).  Accordingly, the Court should therefore grant summary judgment in favor of the Department.

**PRELIMINARY STATEMENT**

The FBI processed a total of 2,501 responsive records, in paper and photograph formats, and produced three video segments totaling 43 minutes and 34 seconds of redacted digital video.

---

[1]    The Department's motion for summary judgment is accompanied by a fifth declaration from Michael G. Seidel, Section Chief of the FBI's Record/Information Dissemination Section, Information Management Division ("Fifth Seidel Declaration") enclosed herewith as Exhibit 1.

Of the 2,501 paper and photograph records, the FBI released 1534 records in full, 565 records in part, and withheld 402 records.  In addition, the FBI released three redacted video segments.  Of the 402 records withheld, 352 records were duplicates of previously processed records, and 50 records were withheld pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E). [2]

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant hereby incorporates its Statements of Material Facts as to which there is no dispute.

## LEGAL STANDARDS FOR SUMMARY JUDGMENT

FOIA requires disclosure of certain agency records, it recognizes "that public disclosure is not always in the public interest" and enumerates several categories of documents exempt from disclosure.  *CIA v. Sims*, 471 U.S. 159, 166–67 (1985); *see also Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (FOIA exemptions are "intended to have meaningful reach and application").

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v.

---

[2] FOIA Exemption (b)(5) has been withdrawn from the reprocessed site survey notes and sketches. The Court granted summary judgement as to all the FBI's coded categories for FOIA Exemptions (b)(6) and (b)(7)(C) (See Opinion, pages 15-18), and FOIA Exemption coded category (b)(7)(E)-6 asserted within the notes and sketches was not challenged by Plaintiff; therefore, conceded. The FBI continues to assert these exemptions and coded categories in a limited fashion in the reprocessed records pursuant to the justifications cited in the Fourth Seidel. See Exhibit B for the FBI's revised production of FBI SA investigative site survey notes and sketches. Fifth Seidel Decl. ¶ 17. Defendant refers the Court to its previous Motion for Summary Judgment, ECF. No 36 (pp.15-20) to the extent Defendant's position concerning Exemptions (b)(6) or (b)(7) remain at issue.

*Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

"To prevail on summary judgment, an 'agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested,' which it can do by submitting '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Shapiro v. Dep't of Just.*, 40 F.4th 609, 612-13 (D.C. Cir. 2022) (quoting *Reps. Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 402 D.C. Cir. 2017)); *see also Machado Amadis v. Dep't of State,* 971 F.3d 364, 368 (D.C. Cir. 2020) (an agency "must show that it 'conducted a search reasonably calculated to uncover all relevant documents.'").  "Agencies can satisfy this burden through a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Id.* (citation omitted). Such affidavits are entitled to "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (citation omitted).  Reasonableness, not perfection, constitutes the Court's guiding principle in determining the adequacy of a FOIA search. *See Campbell v. Dep't of Just.*, 164 F.3d 20, 27 (D.C. Cir. 1998); *Riccardi v. Dep't of Just.*, 32 F. Supp. 3d 59, 63 (D.D.C. 2014).

Courts afford agency search declarations "a presumption of good faith and can be rebutted only with evidence that the agency's search was not made in good faith." *Riccardi*, 32 F. Supp. 3d at 63 (citations and internal quotations omitted). "There is no requirement that an agency search every record system." *Oglesby v. Dep't. of the Army*, 920 F.2d 57, 68 D.C. Cir. 1990). And relatedly, a failure to uncover a responsive document does not render the search inadequate; "the

issue to be resolved is not whether there might exist any . . . documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original); *see also Perry v. Block*, 684 F.2d 121, 128-29 (D.C. Cir. 1982) (agency need not demonstrate that all responsive documents were found and that no other relevant documents could possibly exist).

The defendant agency holds the burden of proof to justify its decision to withhold any documents. *DiBacco v. Dep't. of the Army*, 926 F.3d 827, 834 (D.C. Cir. 2019). There should be "considerable deference" to an agency's judgment regarding what constitutes part of its "give-and-take" by which a decision is made, because the agency is best situated to understand the confidentiality required to prevent injury to the quality of its decisions. *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (citing *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975), and *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)). An agency is entitled to summary judgment if it "proves that it has fully discharged its obligations" under the FOIA. *Reliant Energy Power Generation, Inc. v. Fed. Energy Regulatory Comm'n*, 520 F. Supp. 2d 194, 200 (D.D.C. 2007) (citing *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).

FOIA requires that an agency release responsive information unless it is protected from disclosure by one or more of the FOIA's nine exemptions. *See* 5 U.S.C. § 552(b); *see also Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). The agency bears the burden of demonstrating that any withheld information falls into one or more of those exemptions. 5 U.S.C. § 552(a)(4)(B); *see also Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000). An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index that "permit[s] adequate adversary testing of the agency's

claimed right to an exemption." *Nat'l Treas. Emps, Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973).

Additionally, although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).   The justification for invoking a FOIA exemption need only be "logical" or "plausible." *Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011) (citing *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice.") (citing *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

Finally, FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this section."  5 U.S.C. § 552(b).  The D.C. Circuit has held that district courts have an affirmative obligation to consider this issue and make segregability findings.  *See Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

## ARGUMENT

On September 27, 2023, the Court issued a Memorandum Opinion and Order denying in part and granting in part the Defendant's Motion for Summary Judgment under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552.  Specifically, the Court granted Defendant's motion for summary judgment regarding its asserted Privacy Act Exemptions 6 and 7(C) but denied the motion with regard to the adequacy of the search.  Memorandum and Opinion (Order.) at 20, ECF No. 46.  This Court directed Defendant to provide additional information concerning the following: (1) identify the search terms used for the second FBI search, (2) identify the cut-off date used for the second search and justify the reasonableness of that date (3) confirm whether all files likely to contain responsive materials were searched, ( 4) explain how the Office of Public Affairs (OPA) conducted its search for the video clips produced, and (5) identify the actual investigative techniques the FBI seeks to protect within the Operational Plan.

## I.   THE FBI CONDCUTED A REASONABLE SECOND SEARCH

Conducting a "reasonable" search is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise" and is "hardly an area in which the courts should attempt to micro-manage the executive branch." *Schrecker v. Dep't of Just.*, 349 F.3d 657, 662 (D.C. Cir. 2003) (quoting *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002)).  Additionally, speculative or hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of an agency's search. *See, e.g., Lasko v. Dep't of Just.*, No. 10-5068, 2010 WL 3521595, at *1 (D.C. Cir. Sept. 3, 2010) (per curiam) (explaining that the adequacy of the search is not undermined by mere speculation that additional documents might exist); *Oglesby*, 920 F.2d at 67 n.13; *Elliott v. Nat'l Archives & Recs. Admin.*, Civ. A. No. 06-1246 (JDB), 2006 WL 3783409, at *3 (D.D.C. Dec. 21, 2006) (noting that speculative claims about the existence of other documents cannot rebut the presumption of good faith accorded to agency declarations).

### A.  SEARCH TERMS AND CUT-OFF DATE FOR THE SECOND SEARCH

The Court's opinion ordered the FBI to identify the search terms used in its second search, and to identify the search cut-off date used for the second search and justify the reasonableness of that date.  The FBI reported in the Fourth Seidel Declaration that it searched for both main and cross reference records of the Central Records System (CRS) via Sentinel's search function for potentially responsive records to the Plaintiff's request.  Due to an administrative oversight, the FBI inadvertently mischaracterized the nature of this CRS search based on its erroneous understanding of the facts at the time. Fifth Michael Seidel Declaration at ¶ 6 ("5th Seidel Decl."). The FBI's second search of the CRS after Office of Information Policy (OIP) remanded Plaintiff's request to the FBI in fact consisted of a term search of Sentinel using the term "Gold at Dents Run." This search was again limited to potentially responsive records indexed between January 15, 2018 (the date of Plaintiff's request), and May 14, 2018, the date of the FBJ's initial search for potentially responsive records. *Id*. *Edmonds Inst. v. DOI*, 383 F. Supp. 2d 105, 111 (D.D.C. 2005) ("The D.C. Circuit has endorsed the use of date-of-search as the cut-off date for FOIA requests. *See Public Citizen v. Dep't of State*, 276 F.3d 634, 642 (D.C. Cir. 2001) (rejecting the use of the date of the FOIA request as a cut-off . . . explaining that "at the very least, we think that with minimal administrative hassle, the Department could apply a date-of-search cut-off to the Central File"")

As a result of this search, the FBI located responsive main file 374E-PH-2553532, which has been processed to release any non-exempt information to Plaintiff. 5th Seidel Decl. ¶ 7. Additionally, the FBI also conducted more exhaustive term searches of Sentinel using the terms "Finders Keepers," "Dents Run, Elk County, PA," "Civil War gold," "Enviroscan," "Dennis Parada," and "Operation Union Gold" to verify the FBI's original search results. No additional records were located as a result of these searches. *Id*.

Thus, the FBI has confirmed that it has searched all reasonable locations and search terms, and that its search cut-off date was reasonably calculated to locate records responsive to Plaintiff's request. All such records have been processed, and all non-exempt information has been segregated for release to Plaintiff. *Id*.

## B. FBI SEARCHED ALL FILES REASONABLY LIKELY TO CONTAIN RESPONSIVE RECORDS

The CRS is the comprehensive system of records where FBI personnel are required to serialize records deemed of investigative importance for all investigations, per FBI policy. *Id*. ¶6. The FBI searched the CRS, specifically the Sentinel indices, in this case because it is the location most likely to contain responsive records and the FBI determined that those indices would be the location reasonably likely to contain responsive materials. *Id*. ¶9.

Mr. Seidel has sworn that the FBI's Records and Information Management Policy Guide ("Policy Guide") requires all FBI personnel to make a record of non-transitory investigatory records of investigative importance concerning a particular investigation to the case file of the investigation. *Id*. ¶9.[3]  The FBI confirms a Sentinel search of the CRS would be expected to contain records, if deemed of investigative importance by FBI personnel, such as potential communications with an outside vendor such as Enviroscan, and/or records reflecting investigative expenditures. *Id*.   Per the Policy Guide, FBI email systems are not recordkeeping systems;

---

[3] Non-transitory records are records needed for more than 180 days and possess one or more of the following characteristics: contains information necessary to adequately and properly document the activities and functions of the agency; provides documentation of agency decisions and commitments reached orally (person-to-person, phone, video, or in conference; conveys information of value on agency activities and adds understanding of agency operations and responsibilities; documents the formulation and execution of policies and decisions; and/or provides proof of fiscal or legal rights and obligations. Fifth Seidel Decl. ¶ 11.

therefore, FBI personnel must import all non-transitory record emails, and/or transitory emails deemed of investigative importance, into a certified electronic recordkeeping system, such as Sentinel. *Id*.  As to records reflecting potential investigation expenditures, according to the Policy Guide, it is up to FBI personnel to determine if the information is a non-transitory record and pertinent to an investigation, to upload into a certified electronic recordkeeping system. *Id*. Finally, the FBI's Philadelphia Field Office (PHFO) confirmed it followed the Policy Guide, and serialized all records deemed of investigative importance to case file 374E-PH-2553532. *Id*. Therefore, the FBI confirmed that all locations likely to contain responsive records were searched. *Id*.

### C. FBI PERFORMED A REASONABLE SEARCH OF THE OFFICE OF PUBLIC AFFAIRS (OPA) FOR RESPONSIVE VIDEOS

Mr. Seidel reports that the FBI performed a targeted search of the FBI Philadelphia Public Affairs Office's, Public Affairs Officer (PAO), regarding potential responsive videos of the Dents Run excavation site. ¶10.  The PAO reported that the Office of Public Affairs (OPA) representatives that had been on scene provided the camera used to shoot video at Dents Run back to the FBI.gov and Internet Operations Unit (FIOU), also within OPA. *Id*.  The OPA representative then contacted FIOU who advised that it still had the original files located on a hard drive.   FIOU then provided those video files to RIDS. *Id*.  Mr. Seidel reports that the processed video clips were processed and released on three DVDs. *Id*. ¶ 11.  Accordingly, the FBI reasonably concluded that a search elsewhere would not be a likely location to find any additional responsive material under the FOIA, as the CRS and OPA searches located all responsive material. *Id*. ¶11.

## II. THE FBI PROPERLY WITHHELD INFORMATION PURSUANT TO FOIA EXEMPTION 7(E).

FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an

enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). To withhold materials properly under Exemption 7, an agency must establish that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7. *See Pratt v. Webster*, 673 F.3d 408, 413 (D.C. Cir. 1982). In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Just.*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted).

"[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." *Mittleman v. Off. of Pers. Mgmt.*, 76 F.3d 1240, 1243 (D.C. Cir. 1996) (*citing Pratt*, 673 F.2d at 420 n.32). When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." *Keys v. Dep't of Just.*, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing Pratt, 673 F.2d at 418). A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "based on information sufficient to support at least 'a colorable claim' of its rationality." *Keys*, 830 F.2d at 340 (quoting Pratt, 673 F.2d at 421).

FOIA Exemption 7(E) provides protection for all information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see also Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009) ("the importance of deterrence explains why the exemption is written

in broad and general terms" and further explains why the exemption looks "not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk"). The first clause of Exemption 7(E) affords "categorical" protection for "techniques and procedures" used in law enforcement investigations or prosecutions. *Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997) (*citing Fisher v. Dep't of Just.*, 772 F. Supp. 7, 12 n. 9 (D.D.C. 1991), aff'd, 968 F.2d 92 (D.C. Cir. 1992)). The D.C. Circuit "sets a relatively low bar for the agency to justify withholding" information under Exemption 7(E)." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). The exemption allows for withholding information in the face of "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Mayer Brown*, 562 F.3d at 1193

Here, Mr. Seidel, specifically in response to the Court's Order, provided additional information concerning the investigative techniques at issue. Upon further review of this Operational Plan, Mr. Seidel reports that the FBI determined it would release additional information from this plan because some information at issue had already been made public. *Id*. ¶12. The released portions contain case specific information regarding the Seizure Plan executed in this case. Nonetheless, the FBI continues to withhold certain portions of the plan pursuant to FOIA Exemption 7(E) because release of specific information within the Operational Plan would expose the FBI's investigative tradecraft. *Id*. As such, release of the redacted information would trigger harm to the FBI's ability to execute successful operations in a wide array of future cases and would put FBI personnel at risk. *Id*.

Mr. Seidel identifies two types of information related to the Operational Plan that the FBI maintains would be exempt:

1)  information specifically about the Dents Run Seizure revealing non-public details of the plan execution; and

2) additional details contained in the plan that, though not applicable to the seizure execution at issue here, would disclose additional techniques and procedures considered for use in other investigative scenarios. *Id*. ¶ 13.

Mr. Seidel further notes that the Operational Plan at issue here was not exclusively prepared for this investigation. *Id*.  Instead, it is a standard form containing a comprehensive set of techniques and procedures for consideration in any type of operation and in any type of investigation ( e.g., bank robbery, national security related investigations, kidnapping, etc.). *Id*. As Mr. Seidel has highlighted the Operational Plan at issue includes strategies for surveillance, placement of personnel, assigned duties and investigation tasks of these personnel, communication channels and equipment used during the operation, contingency/abort plans in case of operation disruptions, certain administrative and equipment information, coordination instructions for the multiple agencies (local and federal) involved in the investigation, and local emergency medical facility information, routes and coordination, and the medical operation plans. *Id*.

Mr. Seidel points to the specific danger that the release of the exempt information would provide criminals with a complete playbook of all possible law enforcement considerations when executing investigative tasks. *Id*.  This could not only compromise the safety of law enforcement personnel executing those actions, it could also reasonably be expected to risk circumvention of the law by allowing criminals to alter behavior to avoid detection or disrupt FBI law enforcement operations. *Id*.

As discussed above, the FBI has determined additional information from the Operational Plan could be segregated for release.  *Id*. ¶14.  Accordingly, the FBI properly

asserted Exemption 7(E) over any remaining information in the Operational Plan where it determined that disclosure would harm future FBI operations and thus would be reasonably expected to trigger circumvention of law. *Id*.

### III.   THE   FBI   PROPERLY   REPROCESSED   THE   HANDWRITTEN   INVESTIGATIVE NOTES AT ISSUE

The FBI reprocessed and released additional segregable information from the FBI SA handwritten case notes located at Bates pages 1142-1146, 2065-2071 , and 2131-2146. *Id*. ¶15. Accordingly, FOIA Exemption (b)(5) has been withdrawn from these records. *Id*. ¶17.  As a result of the initial briefing, the Court granted summary judgement as to all the FBI's coded categories for FOIA Exemptions (b)(6) and (b)(7)(C), and FOIA Exemption coded category (b)(7)(E)-6 asserted within the notes and sketches; therefore, the FBI continues to assert these exemptions and coded categories in a limited fashion in the reprocessed records. *Id*.

### IV.   THE FBI HAS PROVIDED FORESEEABLE HARM CONCERNING THE RELEASE OF THE REMAINING RECORDS AT ISSUE

Pursuant to the FOIA Improvement Act of 2016, the FBI has provided the specific harms it reasonably foresees as a result of the potential disclosure of the materials at issue.  The FBI's analysis of records responsive under the FOIA is a two-part process. First, the FBI determines whether a record (or a portion of a record) is exempt pursuant to one or more FOIA exemptions. *Id*. ¶16.  Second, if the record (or portion thereof) is exempt pursuant to one or more FOIA exemptions, the FBI then considers whether foreseeable harm would result from disclosure of the record (or portion thereof).  *Id*.  For the withheld records at issue here (or portions of withheld records), the FBI conducted this two-part analysis and only withheld records (or portions of records) where it determined the withheld record (or portion) met both of these criteria. The FBI's

foreseeable harm for Exemption 7(E) is more fully described above in the section discussing the
FBI's Operational Plan.

## V.        THE FBI REASONABLY SEGREGATED NON-EXEMPT INFORMATION.

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to
any person requesting such record after deletion of the portions which are exempt under this
subsection." See 5 U.S.C. § 552(b)(9). To establish that all reasonably segregable, non-exempt
information has been disclosed, an agency need only show "with 'reasonable specificity'" that the
information it has withheld cannot be further segregated. Armstrong v. Exec. Off. of the President,
97 F.3d 575, 578–79 (D.C. Cir. 1996); *Canning v. Dep't of Just*., 567 F. Supp. 2d 104, 110 (D.D.C.
2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose
reasonably segregable material," which must be overcome by some "quantum of evidence" by the
requester. *Sussman v. U.S. Marshals Serv*., 494 F.3d 1106, 1117 (D.C. Cir. 2007). And a reviewing
court "may rely on government affidavits that show with reasonable specificity why documents
withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. Dep't of Just.*, 518
F.3d 54, 61 (D.C. Cir. 2008).

Here, since the Court's September 27, 2023, Order the FBI reprocessed a total of 51
responsive pages: 31 Released in Part (RIP), and 12 Withheld in Full (WIF). ¶ 17. The FBI
processed the records under the access provisions of the FOIA to achieve maximum disclosure.
*Id*.  Every effort was made to provide Plaintiff with all information in the public domain and with
all reasonably segregable, non-exempt information. *Id*. The FBI carefully examined the documents
and determined the information withheld from Plaintiff in this case, if disclosed, would reveal
privileged information; would cause a clearly unwarranted invasion of personal privacy, or could
reasonably be expected to constitute an unwarranted invasion of personal privacy; and would

disclose techniques and procedures for law enforcement investigations.  *Id*. After extensive review of the documents at issue, the FBI determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.  *Id*.  The FBI did not withhold any reasonably segregable, nonexempt portions from Plaintiff.  *Id.*

Thus, as described in the Fifth Seidel Declaration, the FBI conducted segregability analyses of all withheld records and made every effort to release all segregable information to Plaintiff. Accordingly, summary judgment in the Defendants' favor is warranted, as the FBI has established that the information withheld in full could not be reasonably segregated. *Armstrong*, 97 F.3d at 578-79.

**CONCLUSION**

For the above reasons, Defendant respectfully requests that the Court grant summary judgment in its favor.

Respectfully Submitted,

MATTHEW M. GRAVES, D.C. Bar # 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:    /s/
  BENTON PETERSON, Bar #1029849
Assistant United States Attorney
601 D. Street, N.W.
Washington, DC 20530
(202) 252-2534
*Benton.Peterson@usdoj.gov*
*Counsel for Defendant*